# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### SEPTEMBER 1998 SESSION



FILED

December 21, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | **C.C.A. No. 01C01-9801-CC-00043** |
| | ) | |
| vs. | ) | **Williamson County** |
| | ) | |
| **BRIAN ROBERSON,** | ) | **Honorable Donald P. Harris, Judge** |
| | ) | |
| Appellant. | ) | **(Sale of Cocaine)** |
| | ) | |

**FOR THE APPELLANT:**

TRIPPE S. FRIED
302 Third Ave. South
Franklin, TN 37064

**FOR THE APPELLEE:**

JOHN KNOX WALKUP
Attorney General & Reporter

LISA A. NAYLOR
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN 37243

JOSEPH D. BAUGH, JR.
District Attorney General
21st Judicial District
Williamson County Courthouse
P.O. Box 937
Franklin, TN 37065-0937

ROBBIE BEAL
Assistant District Attorney
P.O. Box 937
Franklin, TN 37065-0937

OPINION FILED: _____

**AFFIRMED**

**JAMES CURWOOD WITT, JR., JUDGE**

**Opinion**

A Williamson County Circuit Court jury convicted the defendant, Brian Roberson, of a Class B felony sale of cocaine under Tennessee Code Annotated section 39-17-417 and recommended a fine of $15,000. The trial judge sentenced him to nine years incarceration with the Department of Correction as a Range I offender and imposed a fine of $2,000. In this rule 3 appeal, the defendant raises four issues:

1. Whether the evidence was sufficient to support the conviction;

2. Whether the trial court erred in admitting into evidence the defendant's tape-recorded statement pertaining to his other indictments;

3. Whether the trial court erred in allowing a state witness to testify as to the truthfulness of the state's confidential informant; and

4. Whether the trial court erred in ruling that the state could impeach the defendant as a witness, should he have testified, through admitting proof of a recent conviction in a drug case. After a review of the case, we affirm the judgment of the trial court.

Chris Clausi, an officer with the Franklin Police Department, testified that he and officer John Brown conducted an undercover drug-purchase operation in Williamson County on October 8, 1996. The officers fitted a "wire" on Carl Hayes, a private citizen who agreed to serve as an undercover operative to buy drugs.

Mr. Hayes went to a street location in Franklin. He testified that he was not looking for anyone in particular but rather for anyone who came along who he thought would sell him crack cocaine. He testified he saw the defendant driving by in a car. Hayes "flagged him down" and got into the car. The defendant asked Hayes if he was "wired up," but Hayes denied that he wore a wire. The defendant spotted the car in which Officer Clausi was sitting and expressed his fear that the police might be surveilling Hayes and himself.

The audiotape of the radio-transmitted conversation was garbled and

2

difficult to understand. Clausi testified the contemporaneous transmission which he had heard from his car was easier to understand than the version recorded on the tape. He intermittently played portions of the tape and testified that at one point the defendant said to Hayes, "I can't take no more indictments or something like that." A little later, the tape reflects that the defendant said, "I can't afford this s _ _ _ man." The defendant with Hayes in the car drove away, passing in close proximity to Clausi's parked car. Clausi testified that he positively identified the defendant as the person who drove the vehicle.

Hayes testified that, despite the defendant's reservations about selling drugs to him, he purchased several rocks of crack cocaine from the defendant with the $80 furnished to him by the officers. After the sale he met with Officers Clausi and Brown.

Brown testified that he searched Hayes and obtained the cocaine which Brown inserted in a plastic envelope. The parties stipulated that the material inside the envelope was duly delivered to the Tennessee Bureau of Investigation lab for chemical analysis and then returned to the Franklin Police Department in the form in which it was presented in court as an exhibit to Brown's testimony. Glen Everett, a forensic chemist for the TBI lab, testified that the material was .6 grams of cocaine base.

During the state's direct examination, Carl Hayes testified that at the time of his testimony he was incarcerated in the Williamson County jail and that the incarceration related back to a 1995 conviction for selling cocaine. During cross-examination, Hayes testified that he had failed a drug screen in the spring of 1997, a few months prior to the defendant's August 1997 trial. He testified that he had been paid by the police department for some of his undercover activities. On cross-examination, he admitted that he participated in the sting operation because he "got into trouble with the law" and that he hoped to help himself by assisting as an

undercover operative. Hayes admitted that he may be the father of a female child and that he paid no support for such child. He further admitted that he knew how to buy drugs, and he testified on cross-examination that he was not sure if he was paid for the October 8, 1996 activity.

During Brown's testimony, the defendant objected when the state asked Brown on direct examination whether Brown believed Mr. Hayes to be truthful. The objection was overruled, and Brown testified that Hayes had always been truthful with the Franklin Police Department.

After the state rested, the trial court heard arguments concerning the state's proposed use of the defendant's prior drug conviction as impeachment evidence had the defendant testified. The court ruled that the probative value of the prior conviction outweighed any unfair prejudice and that the state would be allowed to impeach the defendant with this conviction. The defendant offered no proof.

## I. Sufficiency of the Evidence.

The defendant challenges the sufficiency of the evidence. When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the convicting evidence, this court does not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn.

4

298, 305, 286 S.W.2d 856, 859 (1956).  To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court.  Id. at 835.  In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our supreme court said, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the state."

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact.  State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).  This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt.  Id.

Under Tennessee Code Annotated section 39-17-417, it is an offense to sell cocaine knowingly. Tenn. Code Ann. § 39-17-417 (a), (c) (1991).  The jury heard the testimony of Carl Hayes and Officers Clausi and Brown, and it obviously accredited these witnesses.  In particular, Hayes testified that he purchased from the defendant material which chemical analysis proved to be cocaine. There was no evidence to contradict this testimony, and the testimony was corroborated by Clausi and Brown.  The evidence is clearly sufficient to support the guilty verdict.

## II. **Character Evidence.**

5

In his next issue, the defendant asserts that the trial court erred when it admitted into evidence the defendant's tape-recorded statements that he did not want any "more indictments." Prior to trial, the defendant moved to exclude the portion of the surveillance tape in which the defendant talks about an indictment. The trial court found that the challenged evidence was relevant on the issue of casual exchange and overruled the defendant's motion.

Tennessee Rule of Evidence 403 authorizes the exclusion of even relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Under rule 404, character evidence is generally inadmissible "for the purpose of proving action in conformity with the character or trait on a particular occasion." Tenn. R. Evid. 404(a). The defendant asserts that the proof about an existing indictment violates rule 404(a) because it suggests that the defendant is a drug dealer and, for that reason, likely to have committed the offense on trial. However, rule 404(b) provides that evidence of "other crimes, wrongs, or acts" may be admissible for purposes other than to show that the impugned person acted in conformity with the bad character trait. Under rule 404(b), such evidence may be admissible if the trial court, after a jury-out hearing, determines that "a material issue exists other than conduct conforming with a character trait" and that the probative value is not outweighed by the danger of unfair prejudice. Tenn. R. Evid. 404(b). The comments to section 404 illustrate that the "other" material issues that could support the use of the evidence include "identity (including motive and common scheme or plan), intent, or rebuttal of accident or mistake." Tenn. R. Evid. 404, Advisory Comm'n Comments. The trial court admitted the evidence based upon its finding that it was probative on the issue of casual exchange and that it was not unduly prejudicial.

Tennessee Code Annotated section 39-17-418 establishes a Class

A misdemeanor offense where a person "knowingly possess[es] or casually exchange[s] a controlled substance." Tenn. Code Ann. § 39-17-418(a), (c) (1997). Section 39-17-419 allows the trier of fact to infer from the "amount of a controlled substance ... possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance ... [was] possessed with the purpose of selling ...." Tenn. Code Ann. § 39-17-419 (1997) (emphasis added). Also, this section allows an inference "from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance ... that the controlled substance ... [was] possessed not with the purpose of selling or otherwise dispensing in violation of the provisions of § 39-17-417(a)." Id. (emphasis added).

It is clear that the purpose of the accused in possessing or exchanging a controlled substance is one of the key dynamics in determining simple possession or casual exchange. Obviously, "purpose" is closely related to intent. As such, the trial court's basis for admitting the evidence is within the purview of the "other" material purposes for character evidence as those purposes are suggested by the Advisory Commission Comments to section 404.

However, we cannot discern how evidence about the defendant's indictments would be probative of casual exchange issues. If the proof were offered to show that the defendant was aware of the unlawfulness of selling to Mr. Hayes, the obvious response is that even a casual exchange is unlawful. See Tenn. Code Ann. § 39-17-418 (a), (c) (1997). The defendant's furtive behavior is just as suggestive of a concern that he would be charged with a misdemeanor under section 39-17-418 as it is that he would be charged with a section 39-17-417 felony. If the proof were offered in order to imply that the outstanding indictment was the result of drug offending and that the fact of a previous offense or offenses belies a claim of casual exchange on October 8, 1996, the effort again fails because there is no proof that the subject of the outstanding indictment was drugs or that, if drugs, the indictment was not based upon a casual-exchange misdemeanor. In reality,

7

the state's claim that the evidence is probative of a non-casual exchange is an artiface to show that the defendant is a man who, because of his past drug-dealing, is likely to have sold drugs on the date in question. The trial court erred in basing admission on this theory.[1]

On the other hand, we hold this error was harmless. Tenn. R. Evid. 103(a) (no error committed in rulings on excluding evidence "unless a substantial right of the party is affected"); Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b). It is unlikely the error affected the verdict. The state presented a strong case in which a drug sale was narrated by a witness-participant whose testimony was corroborated by two experienced police officers. The state confiscated the contraband and used it as evidence. The defendant's presence at the scene was firmly established. We see no possibility that the use of the evidence "affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a).

### III. Rule 608 Issue.

### A.

In the defendant's next issue, he asserts that the trial court erred in admitting, over his objection, Officer Brown's testimony that Carl Hayes had always been truthful with the police department.

Tennessee Rule of Evidence 608 provides, in part:

---

[1]     We have reviewed this court's recent decision in State v. Steve Edward Houston, No. 01C01-9711-CC-00510 (Tenn. Crim. App., Nashville, Oct. 28, 1998), and find it distinguishable from the present case. In Steve Edward Houston, this court was reviewing the trial court's refusal to sever four counts alleging drug transactions. In determining whether evidence of one offense would be admissible upon a trial of the others pursuant to Rule of Criminal Procedure 14(b)(1), the court assessed the proof in each of the four counts and found a "distinctive design common among the four occurrences" which belied the defendant's claim of casual exchange. Steve Edward Houston, slip op. at 9. The denial of severance was affirmed. In the present case, the trial court was unaware of the circumstances of the outstanding indictment(s) and could not assess the relevancy of this proof in relation to casual exchange issues.

> (a) ... The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) the evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked.

Tenn. R. Evid. 608(a).

Without question, Hayes's credibility was attacked through the defendant's cross-examination which explored Hayes's prior conviction, his recent re-offending, his possible paternity of an illegitimate child whom he did not support, his incarceration at the time of the testimony, and his possible mercenary and/or self-serving reasons for participating in the sting operation. The defendant's intent in this cross-examination is confirmed in his final argument, in which Hayes's lack of credibility was presented as a key component of the defense. Accordingly, both conditions of rule 608(a) have been satisfied.

### B.

The defendant also complains that the state failed to lay an adequate foundation for Brown's opinion or statement of reputation. The defendant relies upon State v. Dutton, 896 S.W.2d 114 (Tenn. 1995). In Dutton, the defense was not allowed to present as a witness the grandfather of the rape victim to testify to the victim's bad character for truthfulness. Dutton, 896 S.W.2d at 117. At a jury-out hearing, the trial court determined that the defense had laid no foundation for the grandfather's knowledge of the "victim's general reputation for telling the truth." Id. Indeed, the grandfather did not claim to be familiar with the victim's reputation for truthfulness in her community. Id. However, our supreme court held that the trial court erred "in refusing to admit the testimony of the victim's grandfather as to his opinion of the character of the victim for truthfulness." Id. at 118.

Although the supreme court ruled that the trial court found an insufficient foundation to support reputation testimony, it found that a sufficient foundation was established for opinion testimony. When the form of attack is through reputation evidence, the attacking party must establish the second

9

witness's basis for knowing the various components of the first witness's reputation. With respect to opinion evidence, it must be shown that the opining witness is personally familiar with the attacked witness's character; however, the use of opinion evidence does not require a showing that the opining witness knows the primary witness's reputation in the latter's community. The critical basis of knowledge of the opinion character witness is a "personal impression of the primary witness's character for truthfulness." Id.

The grandfather's testimony that he had been around the victim-witness on weekends for a number of years established his personal familiarity with her character for truthfulness. The high court ruled that the grandfather should have been allowed to testify via opinion testimony.

Likewise, the record in the present case demonstrates that Officer Brown was familiar with Carl Hayes. Brown had worked with Hayes in Hayes's capacity as an undercover operative for the department in other drug cases. Through his testimony, Brown evinced a personal acquaintance and familiarity with Hayes. As in Dutton, an adequate foundation for opinion testimony was established. There was no error in allowing Brown's testimony.

## IV. Rule 609 Issue.

The defendant's final issue is the trial court erred in ruling that the defendant could be impeached as a witness, had he testified, via a prior Williamson County conviction for sale of cocaine that was rendered on April 10, 1997.

Subject to certain conditions for admissibility, Tennessee Rule of Evidence 609 authorizes the use of proof of a witness's prior convictions in order to attack the witness's credibility. Tenn. R. Evid. 609(a). One condition requires that the prior crime be either a felony or a crime involving dishonesty or false

10

statement. Tenn. R. Evid. 609(a)(2). In addition, regardless of whether the crime involves dishonesty or false statement, State v. Jerry Lee Finch, No. 02C01-9309-CC-00224, slip op. at 4-5 (Tenn. Crim. App., Jackson, 1995), perm. app. denied (Tenn. 1995), the trial court must determine whether the "convictions's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues." See Tenn. R. Evid. 609(a)(3). The risk of unfair prejudicial effect is heightened when the prior conviction is for an offense that is the same as, or similar to, the offense on trial. State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992). The trial court must assess the similarity between the prior crime and the crime on trial, and then the court must assess the relevance the prior crime has to the issue of credibility. Id. "The standard is not whether there is *any* prejudice to the defendant by allowing the State to use the prior conviction for impeachment, but whether the possible prejudice is outweighed by the probative value of the evidence as to the defendant's credibility as a witness." State v. Roberts, 943 S.W.2d 403 (Tenn. Crim. App. 1996), perm. app. denied (Tenn. 1996).

In reviewing the trial court's determination, this court "does not re-evaluate whether the probative value of the . . . prior convictions outweighs the possible prejudicial effect it might have had. We only evaluate whether the trial judge abused his discretion. . . ." Id; see also State v. Harris, 839 S.W.2d 54, 66 (Tenn. 1992).

In reviewing the trial court's exercise of discretion in the present case, we readily discern the similarity of the prior crime to the crime on trial. Subject to possible variations for the amount of cocaine sold, the crimes are identical. Both crimes resulted in convictions for the sale of cocaine. "However, the fact that a prior conviction involves a similar crime for which the defendant is being tried does not automatically require its exclusion." State v. Robert Harrison Blevins, No. 03C01-9606-CC-00242, slip op. at 10 (Tenn. Crim. App., Knoxville, May 23, 1997). "[T]he trial court must analyze the prior conviction and the offense on trial to determine

11

whether the conviction's probative value on credibility is outweighed by the danger of unfair prejudice on the substantive issues." Id. In the present case, the court concluded that the probative value weighed heavier in the balance. For the reasons explained below, we hold that this discretionary decision should not be disturbed.

In reaching this conclusion, we first recognize that prior convictions of crimes of dishonesty have "greater weight to their probative value regarding credibility." Id. For instance, prior convictions based upon theft crimes have high value as impeachment evidence. See, e.g. Robert Harrison Blevins, slip op. at 10; Phillip S. Roberts, slip op. at 7-11; State v Miller, 737 S.W.2d 556, 559-60 (Tenn. Crim. App. 1987); State v. Hardison, 705 S.W.2d 684, 686 (Tenn. Crim. App. 1987).

Although this court has held that "[p]ossession of marijuana does not involve dishonesty," State v. Baker, 625 S.W.2d 724, 728 (Tenn. Crim. App. 1981), overruled on other grounds, State v. Holt, 691 S.W.2d 520, 521 (Tenn. 1984); see also State v. Tommy Lee Hill, Jr., No. 02C01-9212-CC-00285, slip op. at 2 (Tenn. Crim. App., Jackson, Dec. 1, 1993), we have held otherwise when the impeaching conviction is based upon a sale of controlled substances. State v. Gibson, 701 S.W.2d 627 (Tenn. Crim. App. 1985). In Gibson, a pre-rule case, a prior conviction for selling drugs was allowed to impeach the defendant-witness in a drug-sale prosecution. This court said, "The very nature of the act of dealing in drugs is indicative of dishonesty. . . ." Gibson, 701 S.W.2d at 629. The court based this conclusion upon its observation that drug dealing "express[es] ... the design and determination to violate the law." Id.

Although the defendant is correct when he argues that admitting all convictions which reflect a design to violate the law would embrace virtually all convictions which are based on mental states of knowingness or intent, we believe the act of drug dealing is suggestive of dishonesty because the dealer is engaged in a clandestine commercial enterprise which is carried out deceitfully beyond the

12

scrutiny of society's institutional watchdogs such as health code enforcers, licensing authorities, and taxing agencies. See State v. Ronald E. Tomes, No. 03C01-9612-CR-00477, slip op. at 8-9, n.4 (Tenn. Crim. App., Knoxville, Aug. 20, 1997); see also *Drug Money Laundering: Hearings on Pub. L. No. 99-570 Before the Senate Committee on Banking, Housing and Urban Affairs,* 99th Cong. 1st Sess. 11, 34-35 (1985) (statements of Richard Wassenaar, Asst. Commissioner for Criminal Investigations, Internal Revenue Service, and William Von Raab, Commissioner, U.S. Customs Service) (commenting upon significant IRS investigative time devoted to tax-evading drug traffickers and the large amounts of income tax revenues that go uncollected from illegal drug business).

Although the mere possession of a controlled substance for personal use may not involve dishonesty for purposes of rule 609, the dishonesty and deceit implicit in the illegal sale of drugs causes the convictions based upon such illegal sales to be valuable as impeachment evidence. See State v. Ronnie Roberts, No. 02C01-9502-CR-00049, slip op. at 10-12 (Tenn. Crim. App., May 20, 1996), perm. app. denied (Tenn. 1996); see also State v. Tune, 872 S.W.2d 922, 926-27 (Tenn. Crim. App. 1993) (within trial court's discretion to determine that felony drug convictions were admissible to impeach defendant's credibility as a witness in a homicide case).

Aside from the dishonesty aspect of the crime underlying the prior conviction, the value of the impeachment evidence is also increased when the credibility of the defendant as a witness is "an important issue." Robert Harrison Blevins, slip. op. at 10 . When the defendant makes his credibility an important issue, such as by "denying any wrongdoing and asserting legitimate conduct," Id., this court is "not inclined to question the trial court's allowing . . . the convictions for the purpose of impeachment."[2] Id. We note that Blevins, who was prosecuted for

---

[2]     We infer the tack the defendant would have taken had he testified based upon his final argument to the jury wherein he argued that the state had not proven that the defendant sold the crack cocaine to Hayes.

burglary and vandalism, was properly impeached with prior convictions for burglary, larceny and robbery. In Phillip S. Roberts, this court noted that the defendant in an automobile burglary and attempted theft case might have been expected to "attempt to convince the jury that he had some intent other than to commit a felony or theft, such as to joyride, a misdemeanor . . . ." Phillip S. Roberts, slip op. at 10. In such a situation, which is clearly analogous to the present case, the Roberts court found the defendant's credibility to be a "critical issue." Id. "Accordingly," the court said, " it was within the trial court's discretion to allow the State to use the defendant's prior convictions [breaking and entering and larceny] to impeach his credibility as a witness [in a burglary and attempted theft case]." Id.

Based upon the principles discussed above, we find Roberson's prior convictions for selling cocaine were highly probative because (1) they involved dishonesty and (2) his credibility, had he testified, would have been an important issue in the case. In Robert Harrison Blevins and Phillip S. Roberts, in which the crimes underlying the prior convictions were virtually identical to the offenses on trial, this court deferred to the trial court's discretion in weighing unfair prejudicial effect against probative value because of the concurrence of the dishonesty aspect of the prior conviction and the importance of the defendant's credibility had he been a witness. We are constrained to do likewise in this case. The trial court heard thorough arguments concerning the use of the defendant's prior drug-sale conviction for impeachment purposes and thoughtfully deliberated the question. We find no abuse of discretion.

The judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:

14

_____
GARY R. WADE, PRESIDING JUDGE


_____
THOMAS T. WOODALL, JUDGE

15