Dean Defort Liakas and Frank James Ellsworth *v.*
State of Tennesse.

(*Nashville,* December Term, 1955.)

Opinion filed February 3, 1956.

THOMAS L. ROBINSON, of Memphis, for plaintiffs in error.

NAT TIPTON, Advocate General, of Nashville, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The plaintiffs in error were indicted, tried and convicted for receiving stolen property of the value of more than $60. For this offense the jury fixed their punishment at not more than seven years confinement in the State Prison. It is from this judgment that the plaintiffs in error have seasonably perfected their appeals. Excellent briefs have been filed on both sides and a very able argument heard on behalf of the plaintiffs in error. We have studied this record, the briefs and read all authorities cited and made quite an independent investigation, because of the particular interest related to some of the questions involved. Having done this we now have the matter for determination.

On September 2, 1954, at noon a traffic policeman on duty at Capitol Boulevard and Church Street in Nashville noticed two men running down, in a westwardly direction, Church Street. It was a rather hot day and he made some jocular remark about their speed. Immediately after he had seen these men, he saw Mr. Mallernee, a merchant of Nashville, running after them and calling to passersby, "Stop that thief". The police officer immediately gave chase to one of these two men who turned out to be Ellsworth, the only person that he saw at the time and after capturing Ellsworth back of the Savoy Hotel on Seventh Avenue he took him back to Mr. Mallernee's store.

In the meantime the other man ran into Castner-Knott's store and an officer who was in this store on a shoplifting detail saw a commotion near the store and ran up and he and Mr. Mallernee caught Liakas. At the time they caught Liakas he was carrying a valise or bag. This bag that Liakas had in his possession contained two suits of clothes which Mr. Mallernee claimed to have been stolen from his store. The officer in company with Mr. Mallernee took Liakas to an anteroom at Castner-Knott's to search him for weapons. In the process of this search, he saw Liakas take a parking ticket out of his shirt pocket and undertake to swallow this claim check. This officer then grabbed Liakas by the hand and prevented him from swallowing the check which proved to be a claim check for a car parked in the Cain-Sloan Parking Garage. The officer and Mr. Mallernee then took Liakas back to Mr. Mallernee's store where they found the police officer had already arrived with Ellsworth. Both the officer Elliott who was in Castner-Knott's and the traffic policeman testify that when they reached this point, or that is, as they came in the store Mallernee and Elliott with Liakas,

that Ellsworth offered Mr. Mallernee $1,000 to drop the prosecution but Mr. Mallernee very indignantly said he would not do it for $10,000.

After this was done Elliott the officer who was at Castner-Knott's store took the claim tag to the car which was parked in the parking lot and without a search warrant went to this parking lot and after a conference with the manager of the parking lot he was taken to where the car was stored there. The officer's testimony is that when he approached the car he could see through the windows a great number of men's suits, some in zipper bags and others lying loose on the seat. He also noticed that some of the clothes had no cuffs on the trousers. After examining this for some length this officer took the car and drove it back up to Mr. Mallernee's store where he in company with others investigated the contents of the car. Among the men's clothing found in this car was a suit which the authorities of Levy Brothers store in Memphis undertook, in the instant lawsuit, to identify as one that had come from their store.

The instant suit grew out of a doublebarrel indictment for stealing and for receiving stolen goods, that is, the suit which Levy Brothers claimed came from their store. A Mr. Davis, one of the partners in Levy Brothers, testifies that on or about September 1, 1954, or the day before these plaintiffs in error were caught in Nashville that the plaintiffs in error came into Levy Brothers store in Memphis and Liakas purchased a pair of socks. He also testifies that while Liakas was looking at these socks that Ellsworth was in another part of the store where men's suits were hung on racks and that he took several of these suits off of the rack and examined them and looked at them. After Liakas had purchased his socks he asked where the dressing room was and went into the

dressing room to put these socks on. It seems that when he went into the dressing room to do that he had a suitcase with him and he stayed in that dressing room for some 20 or 25 minutes. At this time though, that is, September 1, 1954, the day before these two men were caught here in Nashville, there was apparently no suspicion attached to these plaintiffs in error, that is when they were in Levy Brothers store in Memphis.

The suit in question in this lawsuit was of a make and pattern carried by Levy Brothers store. The testimony is to the effect that the manufacturers of this suit make up an order of clothes for various retailers and put in it a label designating the store from which it was bought. This label had been cut out of the suit in question. In addition thereto, upon a tag on this suit there was undecipherable writing. Mr. Davis testified that a notation had been made on a suit by one of the clerks of the name of a prospective customer for whom it was being held. After the discovery of this suit in the possession of the plaintiffs in error, Levy Brothers records were checked by Mr. Davis and it was found that a suit of this precise description was missing from their stock and that the record contained no notation that this suit had ever been sold in the usual course of business. There was also testimony introduced, strenuously and seriously objected to, to the effect that in this car there was found a suit stolen from a Mr. Daniels in Memphis.

This rather long recitation of the facts of this case is necessary to arrive at the questions here presented. The very obvious assignment is that there was not adequate identification of the suit alleged to have been taken from Levy Brothers; and that it was error for the trial court to permit testimony as to the search of the automobile in Nashville and that the admission of the testimony of

Daniels about his suits being in this pile which was stolen from his store are all such harmful errors as to require this Court to reverse the case. There are other incidental things or questions presented herein but these all more or less revolve around the three questions last above mentioned and will all be discussed in the course of this opinion without taking up the assignments seriatim.

■ ■ The question presented by the brief, so ably argued in oral argument, is that the evidence was not adequate for the jury to conclude beyond a reasonable doubt that this suit was the one missing from Levy Brothers store in Memphis. The evidence, it is true, is circumstantial but it is well settled in this State that the corpus delicti in criminal cases as well as in others may be proven by circumstantial evidence. *Ford* v. *State,* 184 Tenn. 443, 201 S. W. (2d) 539. In the course of the trial counsel in objecting to certain things that were attempted to be introduced, the court made the statement in reference to this circumstantial evdence that if there was a scintilla of evidence it would be necessary to let the matter go to the jury. This is an unfortunate statement and is not what the court meant. Of course there must be some material evidence of a fact to go to a jury even though this might be circumstantial. We in this State do not recognize what is known as a scintilla of evidence because if there was nothing more under our rules there would be no evidence.

The trial jury had before it the fact that a suit of clothes of the character and make here shown to the jury was missing from Levy Brothers store and that the inventory showed that such a suit had been purchased by them and that their sales record failed to disclose that it had ever been sold in the normal course of events. The jury also had before it the testimony that the two plain-

tiffs in error were in this store not too long before the loss of this suit was discovered and that one of them was seen to take a number of suits off of one of the racks in the store. The jury likewise had evidence to the effect that the missing suit was manufactured by the same manufacturer and of the same pattern as the one found in the possession of the plaintiffs in error. Of course the finding of this suit in the possession of the plaintiffs in error, and whether or not it could be offered in evidence will be dealt with very soon in our treatment of whether or not this could have been offered in evidence.

The plaintiffs in error both claimed that the car in which the suits were found was not theirs but they had in their possession the parking ticket for this car and it is shown that the car was registered in Liakas' wife's name.

The jury had evidence that the retailers label had been cut out of this suit and it was likewise evident that these suits still had the trouser legs unfinished and there were no cuffs on them, in other words, that they were not finished up ready for wear for a man to be hauling them around in a car for his own use. The jury of course could draw from their knowledge of these things that whenever a suit was sold through legitimate channels in a store that the trousers are cut and made to fit the purchaser and that the cuff is put on. On this suit there was some kind of a tag which Davis claimed had some significance as showing that the suit belonged to Levy Brothers. Davis produced one of his regular stock tags and testified that it is identical with the tag found upon this suit and he showed it as far as the court could find out, with some undecipherable notation upon the tag that was in the suit. It seems to us that clearly in the absence of testimony to the contrary, these circumstances were sufficient to warrant the trial jury in concluding that this suit which was

found in this car was one that had been stolen from Levy Brothers store.

This evidence, of course, that we have reviewed above, is that that is most favorable to the State in proving that the suit came from Levy Brothers. On a question of the kind here that is the evidence that we look to. We are not weighing the evidence and comparing it with the evidence otherwise since the jury has determined in favor of the State on this evidence.

When there is material evidence offered in a case it is not our province to substitute our inferences for those drawn by the jury in cases of circumstantial evidence. These inferences are for the jury to draw. *Stanley* v. *State,* 189 Tenn. 110, 222 S. W. (2d) 384. The circumstances proven definitely warrant this jury, or a reasonable juror, in their conclusions as to the identity of the two suits or this suit. The question clearly was primarily for the jury and we should not overturn such a finding when there is ample evidence to support the finding of the jury.

The very able argument is made that the search of the car wherein the suit here in question was found was unlawful, that it was a general exploratory search, made solely in the hope of finding evidence—any evidence—which might connect these defendants with any crime. It is said and very reasonably and well said that the officers here had a reasonable and ample opportunity to obtain a search warrant for this car. It is said that no reason is apparent for the officers' failure to do so, except the wholly inadequate ones that it was less troublesome and more expedient to proceed to search the car without a warrant. Thus it is forcefully argued that the search was an unreasonable one within the constitutional prohibition against unreasonable searches. And it is only when the

search is unreasonable that it becomes unlawful. *Templeton* v. *State,* 196 Tenn. 90, 264 S. W. (2d) 565.

In most States, as in Tennessee, a search may be made without a warrant when there is a lawful arrest. *Elliott* v. *State,* 173 Tenn. 203, 116 S. W. (2d) 1009. When thus making a lawful arrest incriminating articles which are connected with the crime for which the arrest was made or are the means in the possession of one with which the crime was committed as well as any weapons or other things that might effect the criminal to escape which are found in his possession may be seized. Probably the most far reaching case of the kind is that of *Harris* v. *United States,* 331 U. S. 145, 67 S. Ct. 1098, 91 L. Ed. 1399. In this case the Supreme Court of the United States held that a search without a warrant which was made incident to a lawful arrest might be extended beyond the person to include the premises under his immediate control. There are all kinds of cases in the books in which in some instances it is held that a search may be made and others that it may not depending on the facts presented in each individual case. Probably a case going to the other extreme and distinguishing the Harris case, and in effect saying that it is going as far as could be gone, was the case from the Fifth Circuit of the United States Court of Appeals of *Drayton* v. *United States,* 205 F. (2d) 35. This case takes up many, many Federal cases on the question and holds that where a lawful arrest was made that the officers had no right to go up a third floor of the house after taking the keys away from the one that had been arrested and getting some contraband there.

We said before that the kind of a search that was obnoxious was an unreasonable search. The authors of American Jurisprudence in Volume 47 thereof at page 532 under Searches and Seizures say this:

"An unreasonable search has therefore been defined as an examination or inspection without authority of law of one's premises or person, with a view to the discovery of stolen, contraband, or illicit property, or for some evidence of guilt, to be used in the prosecution of a criminal action."

■ This brings us to the facts of the instant case. Here the officers had arrested the plaintiffs in error for committing a felony. It is apparent that while thus under arrest one of the plaintiffs in error attempted to dispose of this parking lot ticket. Their flight before they were caught was a part of the commission of this felony of grand larceny. When the plaintiffs in error had been arrested for the commission of this felony and this incriminating document which he sought to destroy having been found on him clearly; the officer should make a further investigation as to what he would find as a result of this information which was attempted to be destroyed. It seems to us that this clearly was information or an indication to the officer that these parties were trying to dispose of this in an act to cover up other felonies that they were in the process of committing. Thus with this in view this officer went to this car and obtained the information above detailed. Naturally it was probable, and was right, for the officer to conclude, and the officer might have concluded, that this ticket was to a stolen automobile, another felony. When the officer got there though he found these clothes which had been stolen. In other words the ticket was the direct information for the fact that another felony, other than that for which they had been arrested, had then and was being committed in his presence which under Code Sections 11536, 11541 (Williams' Annotated Code) would clearly warrant this officer in making this investigation.

A case very much in point is that of *State* v. *Cyr*, 40

Wash. (2d) 840, 246 P. (2d) 480, wherein the Supreme Court of Washington concluded that it was not unreasonable to search the accused's automobile which was parked outside of the place where the arrest was made when it was in close proximity to the place of the arrest and there existed such probable cause to believe that a search of the vehicle would reveal evidence pertinent to the charge. Therefore it was held that such a search was incident to the lawful arrest. In this case a number of other cases from other jurisdictions are reviewed. (1) Where the defendant was arrested in his apartment and a search of his automobile which was parked in the apartment house garage was upheld. (2) Where after a person had been arrested for intoxication and his automobile keys were taken from him the officers took the key several blocks and found his car and made a search. The Michigan Court there held that the evidence seized during this search was admissible. It is needless for us to refer to these other cases therein because if interested the case can be read. We feel though that under the Code Sections last above mentioned that it is essential to the protection of society that a wide discretion be vested in officers chosen to enforce our laws against felonies and that in view of such a discretion when facts develop as developed herein the officer who did not make the investigation would not be worthy of the name of an officer. The investigation and resulting evidence secured thereby is and should be admissible as evidence in the trial. Such search is not unreasonable and thus not within the constitutional prohibition of search and seizure.

█ It is very forcefully and ably argued that the trial court committed error in admitting testimony of Mr. Daniels to the effect that four of these suits which were in this car belonged to his company because it is said that

this was erroneously admitted because it comes within that rule prohibiting the proof of other crimes.

In 20 Am. Jur., page 287, Sec. 309, Evidence, the following very sound and general rule is thus stated:

"A person, when placed upon trial for the commission of an offense against the criminal laws, is to be convicted, if at all, on evidence showing his guilt of the particular offense charged in the indictment against him. It is a well-established common-law rule that in criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged, unless the other offenses are connected with the offense for which he is on trial."

This rule has many well recognized exceptions as is said by the annotator of 125 A. L. R., at page 1036:

"Thus, evidence of other crimes may be admissable for purposes of identifying the defendant, or for establishing a mental state, such as guilty knowledge, motive, or intent on the part of the defendant, or for establishing a common scheme or plan for the commission of several crimes so related to each other that proof of one tends to establish the others."

Among the many exceptions to this rule are several Tennessee cases involving different states of fact. The case of *Sykes* v. *State*, 112 Tenn. 572, 82 S. W. 185, 105 Am. St. Rep. 972, is our first case which holds that other acts of sexual intercourse might be shown. There have been many such cases since. In this reported case numerous cases from various jurisdictions are taken up. Since

that time we have had many cases in this State where other crimes were shown which come within the quotation from the annotation in A. L. R. above quoted. Some of our cases are *Rafferty* v. *State,* 91 Tenn. 655, 16 S. W. 728; *Mays* v. *State,* 145 Tenn. 118, 238 S. W. 1096, and *Thompson* v. *State,* 171 Tenn. 156, 101 S. W. (2d) 467. The Rafferty case is a case where many fires had been had as is the Thompson case where the man was convicted of arson. We have likewise the authority of Wharton on Criminal Evidence, 12th Edition, Volume 1, at Section 240, under the title "Plan, Scheme, or System", the exceptions are enumerated. It certainly seems to us that under these opinions and under the general exceptions of the land over that there is no error by admitting this evidence when it comes to the peculiar facts of this case. Here within a day or two these parties were caught running away from a store with the storekeeper following them with his suits (there is no denial that they were his suits and were turned over to him in the presence of the plaintiffs in error) and when these things were all feloniously obtained in this way and were all found together with the suit for which they were being tried for stealing or receiving in this particular case it seems to us that it was all an incident of this transaction and was subject to inquiry here for the reasons above expressed.

We have given this case very careful consideration. We feel after this investigation that clearly there is no reversible error in the record and the judgment below must be affirmed with costs.