IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

OCTOBER 1998 SESSION

FILED

October 20, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. No. 02C01-9804-CC-00103 |
| Appellee, | ) | |
| | ) | McNairy County |
| v. | ) | |
| | ) | Honorable Jon Kerry Blackwood, Judge |
| MICKEY WHITE, | ) | |
| | ) | (Burglary, Theft of Property over $1,000) |
| Appellant. | ) | |

FOR THE APPELLANT:

Gary F. Antrican
District Public Defender
P. O. Box 700
Somerville, TN 38068

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue, North
Nashville, TN 37243-0493

Elizabeth T. Ryan
Assistant Attorney General
425 Fifth Avenue, North
Nashville, TN 37243-0493

Elizabeth T. Rice
District Attorney General
302 Market Street
Somerville, TN 38068

Ed Neal McDaniel
Assistant District Attorney General
300 Industrial Park Drive
Selmer, TN 38375

OPINION FILED: _____

REVERSED AND DISMISSED

L. T. LAFFERTY, SENIOR JUDGE

**O P I N I O N**

The defendant, Mickey White, appeals as of right from a McNairy County Circuit Court jury finding him guilty of burglary and theft of property over $1,000. The trial court, as result of these jury verdicts, imposed sentences of forty months for the offenses of burglary and theft of property over $1,000, to run concurrently to each other. Also, the trial court held these two sentences were to be served consecutively to prior sentences for which the defendant was still obligated. The sole issue presented for review is whether the evidence is sufficient to sustain the defendant's convictions for burglary and theft of property over $1,000. After a careful review of the trial record, briefs of all parties, and the appropriate law, we reverse the convictions and dismiss the charges.

**TESTIMONY**

Mr. Simon Mast owned and operated the Bethel Springs Texaco Service Station on Main Street. Mr. Mast closed his service station on Saturday, July 27, 1996, at 5:00 p.m. On Monday, July 29, 1996, Mr. Mast received a telephone call from one of his employees to come to his service station in Bethel Springs. Upon his arrival at the station, Mr. Mast found the back windows broken out and the steel shutters pried apart. Entrance to the service station was accomplished by pushing in a Plexiglas window in the garage door.

Mr. Mast found the following items were missing: a jug of chocolate milk from the refrigerator, a cordless telephone ripped from the wall, a bank bag containing approximately $1,000 to $1,100 in checks and cash, and various tools. Also missing was a five-gallon white plastic bucket used for dry walling. Mr. Mast believed the missing bucket was last seen outside his office. Another similar bucket was found outside containing tools, inner tubes, and drill bits.

Mr. Mast spoke to the defendant on July 27, 1996 when the defendant came in the service station and asked to use the phone. The defendant was on the phone

2

approximately thirty minutes and seemed unhappy over a job he had done. Later, the defendant again requested to use the phone, but Mr. Mast told him to use the pay phone outside the service station, about fifty feet from the station. Later that day, the defendant returned and pawned some Ray-Ban glasses and a wristwatch with one of Mr. Mast's employees.

On the side of the service station are two public restrooms facing a grocery store owned by Mr. Louis Perrigo. There was a question as to whether the two restrooms were locked on the night of July 27, 1996. Mr. Mast did not see the defendant commit these offenses, nor did anyone else. Mr. Mast had several white plastic buckets, similar to the one missing, about his service station.

On July 28, 1996 at approximately 8:00 p.m., Mr. Louis Perrigo observed the defendant going in and out of the service station restrooms three or four times. Mr. Perrigo called to the defendant about what he was doing in these outside toilets. The defendant did not have a bucket.

Mrs. Barbara Kraus lives across the street from the Bethel Springs Texaco Service Station at a distance of 100 to 125 feet. At approximately 9:00 p.m. on July 28, 1996, Mrs. Kraus observed the defendant coming down Fourth Street which runs between Walker Street and her property across from the service station. The defendant was carrying a white plastic bucket and went to the phone booth by the service station. Approximately twenty minutes later, someone picked up the defendant. Mrs. Kraus did not see the defendant go near the service station. Mrs. Kraus had observed many persons use this phone, including the defendant, on prior occasions. The defendant left in a green Ford pickup.

Mrs. Deborah Price, Mrs. Kraus's sister-in-law, saw the defendant going towards a phone. Mrs. Price did not see the defendant with anything in his hands. Mrs. Price did not see the defendant use the phone or do anything.

3

Shelley Price, age 15, was at her aunt's home, Barbara Kraus, on July 28, 1996. Ms. Price saw the defendant come from behind the service station with a bucket in his hand. Ms. Price also observed a towel wrapped around the defendant's other hand. The defendant was going toward the phone booth. The defendant used the phone and someone in a light-colored Ford truck picked up the defendant fifteen minutes later.

Also at his aunt's home was Jonathan Price, age 12. Jonathan saw the defendant come from behind the Texaco service station with a bucket in his hand. He also observed the defendant had a towel wrapped around his other hand. Jonathan saw the defendant use the phone and later someone in a truck picked up the defendant. Jonathan saw nothing that indicated a break-in at the service station.

In behalf of the defendant, Mickey Farley related that he had seen plastic buckets every day about the service station. Mr. Farley stated that traffic at 9:00 p.m. on Sundays was pretty busy. Mr. Farley advised the jury the defendant stayed with him at his home for a few days. Mr. Farley denied owning a Ford truck, but did own a gray Dodge or a yellow GMC. Mr. Farley had observed white plastic buckets inside the service station.

Mr. Randle Holley, an acquaintance of the defendant, stated he had gone by the service station to pick up his tools. Mr. Holley had pawned the tools and a log chain with Andy Mast, brother of the station owner. Mr. Simon Mast advised Holley the tools "had been took," and also possibly the log chain. Mr. Holley related he attempted to obtain the tools in July or August, 1996.

The defendant did not testify.

**LEGAL ANALYSIS**

The defendant strongly contends, based on the evidence in this record, a rational trier of fact could not have found the essential elements of the offenses beyond a

4

reasonable doubt.  The State counters that in viewing the evidence in the light most favorable to the State the evidence was sufficient to support a conviction for these offenses.

When there is a challenge to the sufficiency of the evidence, the State is entitled to the strongest legitimate view of the proof at trial and all reasonable inferences which might have been drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 836 (Tenn. 1978).  A jury verdict approved by the trial judge, accredits the testimony of the witnesses for the State and resolves any conflicts in the evidence in favor of the State's theory.  *State v. Williams,* 657 S.W.2d 405, 410 (Tenn. 1983), cert. denied, 465 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984).  This court may neither reweigh nor reevaluate the proof offered at trial and must not substitute its inferences for those drawn by the trier of fact.  *Liakas v. State,* 199 Tenn. 298, 286 S.W.2d 856, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956).  The ultimate issue is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Tenn. R. App. P. 13(e).

A criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State,* 505 S.W.2d 237, 241 (Tenn. 1973), cert. denied, 419 U.S. 877, 95 S.Ct. 141, 42 L.Ed.2d 117 (1974).  However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant. . . ."  In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *State v. Crawford,* 470 S.W.2d 610, 612-13 (Tenn. 1971); *State v. Matthews,* 805 S.W.2d 776, 780 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the defendant has the burden in this Court of illustrating why the

5

evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *Tuggle,* 639 S.W.2d at 914.

A clear analysis of the evidence in this record reveals the State's proof is wholly circumstantial. Therefore, does the evidence weave a web of guilt around the defendant from which he cannot escape?

In order for the State to meet its burden of proof, the State must prove beyond a reasonable doubt the essential elements of the offenses of burglary and theft of property over $1,000. In indictment no. 966, count one alleges the defendant:

> on or about the 28th day of July, 1996, . . . did unlawfully, feloniously, knowingly, and without the effective consent of Simmon Mask d/b/a Bethel Texaco, the owner of the building, enter a building other than a habitation which was not open to the public with the intent to commit theft, in violation of T.C.A. § 39-14-402.

Count two alleges the defendant:

> on or about the 28th day of July 28, 1996, . . . did unlawfully and knowingly exercise control over property, to-wit: a telephone, tools, and money, a more particular description thereof being to the Grand Jurors unknown, valued at over one thousand dollars ($1,000) but less than ten thousand dollars ($10,000), of Simmon Mask without his effective consent, with the intent to deprive said Simmon Mask thereof, in violation of T.C.A. § 39-14-103.

The State proved beyond a reasonable doubt that the Bethel Springs Texaco Service Station was burglarized and certain items were taken. Entry was made into the service station by pushing a window in the garage door. There was additional evidence of unsuccessful attempts to enter the station through the rear windows. The State's only witness to place the defendant at the service station between 5:00 p.m. on July 27, 1996 and 6:00 a.m. on July 29, 1996 was Mr. Louis Perrigo. Mr. Perrigo, at 8:00 p.m. on July

6

28, 1996, observed the defendant entering and leaving the service station's public restrooms approximately five times, which caused Mr. Perrigo to yell at the defendant. Mr. Perrigo did not observe the defendant with a white bucket. There was a controversy in the record as to whether these public restrooms were in working order and locked on the weekend of July 27-29, 1996. The walls of the restrooms were not damaged to permit entry into the service station.

Three State witnesses, Barbara Kraus, Shelley Price, and Jonathan Price, observed the defendant at 9:00 p.m. on July 28, 1996, leaving the side of the service station with a white bucket in his hand and walking toward a phone booth. They observed the defendant make a call and was picked up by an unknown individual in a pickup truck fifteen minutes later. Two witnesses observed the defendant's other hand wrapped with a towel. The witnesses saw nor heard anything that suggested the service station had been burglarized. Mrs. Deborah Price, mother of Shelley and Jonathan Price, observed the defendant go to a phone booth with nothing in his hands.

The record establishes that, in addition to there being white buckets in the service station, there were white buckets scattered outside the service station in various places. The record is absent as to any law enforcement investigation or any results thereof, such as fingerprints, blood at the scene, or whether any of the stolen items were found in the defendant's possession, directly or circumstantially.

In conclusion, we find that the State has not sufficiently tightened the web of guilt surrounding the defendant to support these convictions. Therefore, we reverse the trial court's judgments and dismiss these charges.

_____
L. T. LAFFERTY, SENIOR JUDGE

7

CONCUR:

_____
JOHN H. PEAY, JUDGE

_____
DAVID G. HAYES, JUDGE

JOHN H. PEAY, JUDGE