# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
July 25, 2000 Session

## STATE OF TENNESSEE v. GREG HARTMAN

**Direct Appeal from the Circuit Court for Rhea County**
**No. 14288    Thomas W. Graham, Judge**

---

**No. E2000-00685-CCA-R3-CD**
**January 18, 2001**

---

The Defendant was convicted by a Rhea County jury of attempt to commit kidnapping. The Defendant now appeals arguing that there was insufficient evidence presented at trial to convict him of attempt to commit kidnapping. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

J. Arnold Fitzgerald, Dayton, Tennessee, for the appellant, Greg Hartman.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Assistant Attorney General; James Michael Taylor, District Attorney General; and Will Dunn, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

The Defendant, Greg Hartman, was convicted by a Rhea County jury of attempt to commit kidnapping. He was sentenced as a Range I standard offender to four years incarceration and fined five thousand dollars. The Defendant now appeals, arguing that there was insufficient evidence presented at trial to convict him of attempt to commit kidnapping.

Viewing the facts in the light most favorable to the State, the following events took place on the afternoon of June 22, 1996. The Defendant's brother, Devan Hartman, along with the Defendant and the Defendant's wife, Kim Hartman, picked up the victim, Ann Broyles, at her home in Dayton, Tennessee around 12:30 in the afternoon and drove her to the trailer where Devan Hartman was living. Broyles testified that she went over to Hartman's to watch television and play cards. Broyles packed an overnight bag because she anticipated spending the night. However, after Broyles had been at the trailer for about four hours, Devan Hartman discovered that he had to work, so Broyles decided to go home. According to Broyles, Hartman wanted to rest before going to work, so he

asked the Defendant to take her home, and the Defendant agreed. Broyles said that she asked Kim Hartman to go also, but Hartman declined because she had to take care of her baby. The Defendant testified that he told Broyles that he wanted to stay off the main roads because he was drunk and did not have a driver's license. Broyles testified that she did not see the Defendant drink more than one beer during the entire time she was at the trailer and that she did not believe that he was drunk when he took her home.

Around six o'clock that evening, the Defendant and Broyles left the trailer in the Defendant's truck. At some point during the drive, Broyles told the Defendant that he was going the wrong way. Broyles testified that the Defendant replied, "I know, I'm going to take you over here and make love to you." Broyles told the Defendant no and that she wanted to go home. He repeated the statement, and Broyles said, "Greg, don't do this." The Defendant then pulled into an area known as "Donkey Grounds." As he was turning around, Broyles jumped out of the truck, and the Defendant drove away. A couple that had been fishing in the area saw the incident and approached Broyles. According to the couple, Broyles seemed scared and claimed that the Defendant had tried to rape her. The couple took Broyles to the sheriff's department.

The Defendant was arrested shortly after Broyles arrived at the sheriff's department. Charles Byrd, Chief Deputy and Chief Investigator for sex crimes in Rhea County, took the Defendant's statement. In his statement, the Defendant admitted that he did "talk to [Broyles] about having sex with her" and that he "let [his] penis overload [his] thinking." Byrd testified that the Defendant was sober at the time of his statement, which was less than an hour after the incident occurred. The Defendant also stated that he threw Broyles' clothes out of his truck on his way back to Devan Hartman's trailer. Once back at the trailer, the Defendant never mentioned what had taken place between himself and Broyles.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), overruled on other grounds, State v. Hooper, 29 S.W.3d 1 (Tenn. 2000).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956); State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence.

State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

In this case, the Defendant was convicted of criminal attempt to commit kidnapping. A person is guilty of criminal attempt who, "acting with the kind of culpability otherwise required for the offense,"

> [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a)(3). Kidnapping is false imprisonment as defined in § 39-13-302 "[u]nder circumstances exposing the other person to substantial risk of bodily injury . . . ." Id. § 39-13-303(a)(1). A person is guilty of false imprisonment who "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Id. § 39-13-302(a).

Here, the jury found beyond a reasonable doubt that the Defendant attempted to kidnap Ann Broyles. When Broyles told the Defendant that he was going the wrong way, the Defendant said that he knew but that he was "going to take [her] . . . and make love to [her]." Broyles told the Defendant "not to do this," but he proceeded to pull into a secluded area. Frightened of what the Defendant was going to do, Broyles jumped out of truck while it was still moving. According to two witnesses standing nearby, the Defendant never even slowed down. The Defendant's actions exposed Broyles to a substantial risk of bodily injury. There was sufficient evidence for a reasonable jury to find that the Defendant intended to keep Broyles confined in his truck. The Defendant told Broyles that he wanted to have sex with her, he pulled into a secluded area, and he never stopped his truck even when Broyles jumped out. In addition, the Defendant's conduct constituted a substantial step toward the kidnapping of Broyles when he drove the wrong way and took Broyles to a secluded area. This conduct meets all of the elements for attempting to kidnap the victim.

The Defendant argues that the kidnapping statute at issue in this case combines the common law offenses of kidnapping and false imprisonment. As such, the Defendant argues that there was no false imprisonment and therefore, that there could be no kidnapping. However, the case law upon which the Defendant relies is based on a statute that has been repealed. The current statute governing the offense with which the Defendant is charged defines kidnapping as including the statutory offense of false imprisonment. The Defendant's reliance on the common law definitions of kidnapping and false imprisonment is misplaced. The current statutory definition of false imprisonment simply requires that the offender "knowingly remove[] or confine[] another unlawfully so as to interfere substantially with the other's liberty." Id. § 39-13-302(a). There was ample evidence for the jury to find that the Defendant knowingly confined Broyles in his truck, thereby

substantially interfering with her liberty.  See id.  Thus, the elements of false imprisonment were adequately supported by the evidence presented at trial.

      Accordingly, the judgment of the trial court is AFFIRMED.


_____
ROBERT W. WEDEMEYER, JUDGE