# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 14, 2001

## STATE OF TENNESSEE v. CHRISTOPHER STEVEN NUNLEY

### Direct Appeal from the Criminal Court for Davidson County
### No. GSA 2880   Steve R. Dozier, Judge

---

### No. M2000-00903-CCA-R3-CD - Filed April 12, 2001

---

The defendant, Christopher Steven Nunley, was convicted of contributing to the delinquency of a minor, a Class A misdemeanor. The trial court imposed a Range I sentence of 11 months and 29 days at 75%. In this appeal of right, the defendant challenges the sufficiency of the evidence. The judgment is affirmed.

**Tenn R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Terry J. Canady, Madison, Tennessee (on appeal), and Frank E. Mondelli, Nashville, Tennessee (at trial), for the appellant, Christopher Steven Nunley.

Paul G. Summers, Attorney General & Reporter; Elizabeth T. Ryan, Assistant Attorney General; and Derrick Scretchen and Thomas Williams, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

In 1999, the victim, 16-year-old Beth Buchanan, resided with her mother, Gina Buchanan Dewus, and her stepfather. Sometime during the year, the victim and the defendant, age 20 at the time, began to date. Because she became concerned with the amount of time they were spending together, Ms. Dewus developed stricter supervision, prohibiting their dating except at the Dewus residence and in the presence of her and her husband. The victim reacted angrily, stated that she intended to go out with the defendant anyway, and, in July of 1999, ran away from the Dewuses' home. Later that day, she was found with the defendant at a Wal-Mart store. Two months later, the victim ran away a second time and was gone for three weeks and two days. Ms. Dewus made a police report, placed fliers throughout Nashville, and talked with the defendant, who claimed that he knew nothing about the victim's whereabouts. Ms. Dewus received information that the victim had been to the Lentz Clinic in downtown Nashville and had listed the defendant's address and phone

number as her place of contact. With the assistance of the clinic's staff, which had tested the victim for a sexually transmitted disease, Ms. Dewus developed a plan whereby the victim returned to the clinic and was taken into custody by juvenile authorities.

After the victim was returned to the residence, Ms. Dewus employed a counselor. The victim was uncooperative and, at times, hostile. On October 29, 1999, only a few days after the victim had been returned to their residence, the Dewuses heard their alarm system activate. When they ran to the victim's door, they found it had been barricaded. After forcing their way through the door, they saw that a window had been opened and the screen broken out. They saw the victim, who was wearing her pajama top and shorts, running away. Mr. Dewus followed on foot and Ms. Dewus followed in her vehicle. Ms. Dewus saw the victim get into a vehicle driven by the defendant and attempted to follow. As she sped after the defendant and positioned her vehicle directly behind his, he slammed on his brakes. He then repeatedly sped up and then slammed on his brakes, apparently attempting to cause a collision between the two cars. At one point, the vehicles actually made contact. Ms. Dewus blew her vehicle's horn continually in an effort to alert the police but eventually the horn malfunctioned. When the defendant returned to the subdivision in which his mother lived, Ms. Dewus drove back to her residence and telephoned police. After making the call, she observed the defendant drive by her residence in the same car. He appeared to be alone. The victim was still missing at the time of trial on March 14, 2000.

Rebecca Henley Thompson, who testified for the state, witnessed the October 29 car chase. She described the first car as "flying" and the car which followed as "laying on the horn." She observed the first car slam on its brakes while in front of the second car. Ms. Thompson, who lived near the defendant's family residence, was later contacted by Ms. Dewus and received information about the missing victim. A couple of days later, Ms. Thompson drove by the Nunley house and saw a girl who "looked like the girl in the picture" provided by Ms. Dewus. Ms. Thompson reported the incident to Mr. Dewus.

At trial, the defendant denied that he had been found with the victim at Wal-Mart after her first runaway. He acknowledged, however, that he had led the police to where she was found. He also denied any involvement in her second runaway. He claimed that he had learned that the victim had gone to the Lentz Clinic only after authorities there had telephoned him about her test results. He contended that when the victim called later, he gave her the information provided by the clinic. The defendant asserted that the victim claimed to have been sexually abused as a child and stated that she believed that the abuser was again a threat. He contended that she then arranged for him to meet her at the clinic. The defendant admitted to the car chase with Ms. Dewus, but denied that he had slammed his brakes, claiming instead that Ms. Dewus repeatedly rammed his vehicle from behind. He also denied that the victim was in his car during the chase and contended that he had only been in her neighborhood to look for some sign, such as a light in her bedroom window, that she was back at home. The defendant claimed that he had neither seen nor spoken with the victim since the second time she had run away.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). The relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). This court may neither reweigh nor reevaluate the evidence; nor may this court substitute its inferences for those drawn by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (Tenn. 1956). The evidence is sufficient when a rational trier of fact could conclude that the defendant is guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979). When there is a challenge to the sufficiency of the evidence, the defendant has the burden of demonstrating that the evidence is not sufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated Section 37-1-156 provides in pertinent part as follows:

> Any adult who contributes to or encourages the delinquency or unruly behavior of a child, whether by aiding or abetting or encouraging the child in the commission of an act of delinquency or unruly conduct or by participating as a principal with the child in an act of delinquency, unruly conduct or by aiding the child in concealing an act of delinquency or unruly conduct following its commission, commits a Class A misdemeanor . . . .

Tenn. Code Ann. § 37-1-156(2).

In this appeal, the defendant argues that because the evidence is "controverted and inconsistent" and the victim was never located, the conviction cannot stand. We disagree.

The defendant was an adult at the time the offense was committed and the victim was a juvenile. There was evidence that even though the victim had only recently been returned to her parents' residence by authorities after an absence of over three weeks, the defendant assisted her in again running away. There was also evidence that the defendant, even after the offense, continued to help the victim avoid return to parental custody. By the time of trial, the victim had been missing for approximately five months. The defendant's trial testimony was rejected by the jury. The written record of the trial provides little support for his claims of innocence. Under these circumstances, the jury certainly acted within its prerogative in determining that the defendant was guilty of contributing to the delinquency of a minor.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE