# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 30, 2010 Session

## STATE OF TENNESSEE v. CHASE COURTLAND POWELL

### Appeal from the Criminal Court for Knox County
### No. 89654    Richard Baumgartner, Judge

---

### No. E2009-01301-CCA-R3-CD - FILED JUNE 2, 2010

---

A Knox County Criminal Court jury convicted the defendant, Chase Courtland Powell, of one count of theft and one count of robbery. The defendant appeals, claiming that the trial court erred by denying his motion for judgment of acquittal and that the convicting evidence was legally insufficient to support his robbery conviction. We hold that the evidence supports his robbery conviction, but we note that the judgments of conviction reflect sentences for both theft and robbery in contravention of the protections against double jeopardy. Accordingly, the defendant's conviction judgment for theft is vacated, and the jury's guilty verdict for the theft is merged into the judgment of conviction of robbery. The defendant's robbery sentence is affirmed, and we remand solely for the correction and entry of an appropriate judgment consistent with this opinion.

### Tenn. R. App. P. 3; Judgments of the Criminal Court Vacated in Part; Affirmed in Part; and Remanded

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Joshua D. Hedrick, Knoxville, Tennessee, for the appellant, Chase Courtland Powell.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Randall E. Nichols, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On May 20, 2007, the defendant entered Michael's craft store and, after selecting an item for purchase, approached the cash register. The cashier, Christina

McDaniel, opened the cash register drawer, and the defendant took money from the drawer and pushed Ms. McDaniel. He escaped the store but was later apprehended by law enforcement officers during a traffic stop.

On July 29, 2008, a Knox County grand jury indicted the defendant for two counts of robbery, *see* T.C.A. § 39-13-401 (2006), on the basis of the May 20, 2007 incident.[1] The first robbery count asserted that the defendant accomplished the theft of money from Michael's by the use of violence against Ms. McDaniel. The second robbery count asserted that he accomplished the theft by putting Ms. McDaniel in fear.

After a trial, a Knox County petit jury found the defendant guilty in the first robbery count of the lesser included offense of theft, *see* T.C.A. § 39-14-103, and guilty in the second robbery count as charged. The trial court sentenced the defendant to eight years' incarceration for robbery, a Class C felony, to run concurrently with an 11 month, 29 day sentence in the county jail for theft, a Class A misdemeanor. The defendant filed a timely motion for new trial and notice of appeal.

*Trial*

Ms. McDaniel testified that she worked as a cashier at Michael's on May 20, 2007, when the defendant approached her checkout station. The defendant had a "little bag for wedding party favors" that cost "under a dollar." Ms. McDaniel said, "[The defendant] handed me a bill and I was just going to give him just a few coins back in change." She testified that she opened the cash register and that the defendant shoved her "across the chest just below the neck" with his forearm. She said, "I stepped back and . . . saw him reach in and take the cash and I just started screaming, 'Help. I'm being robbed.'" The defendant then ran out the door, and the manager of the store ran after him. Ms. McDaniel "just kind of stood there shaking." She testified that the incident scared her and that she was "in disbelief."

On cross-examination, Ms. McDaniel clarified that the defendant reached for the compartment of the cash register drawer that contained $20 bills. Defense counsel then asked the following line of questions:

> Q    And when [the defendant] grabbed the 20's you pushed
>      on the drawer, closing his hand in the drawer, right?

---

[1]The grand jury also indicted the defendant on two counts of aggravated robbery involving a separate incident on May 10, 2007, but the State had these charges dismissed.

A      I don't know.  I remember trying to shut the drawer.  I don't remember if I caught his hand or not.

Q      Well, okay.  But you remember that . . . when he grabbed the 20's your reaction was to shut the drawer?

A      Yes.

Q      Okay.  And you pushed the drawer shut, right?

A      I tried to.  It wouldn't close.

Q      You tried to?  It didn't shut all the way because his hand was in there, right?

A      Yes.

               . . . .

Q      . . . . And it was after that, that's when you said he pushed you?

A      Yes.

Q      Okay.  So, he grabs the 20's, you shut his hand in the drawer, he pushed you, and then when he pushes you, you go back, right?

A      Yes.

Ms. McDaniel also agreed that she yelled for help as the defendant ran from the store.

On redirect-examination, Ms. McDaniel said, "To the best of my knowledge . . . [the defendant] leaned over, I tried to shut the drawer, he pushed me, grabbed cash, and ran."

On recross-examination, defense counsel attempted to impeach Ms. McDaniel with a tape recording of her preliminary hearing testimony in which she said that the defendant grabbed the money and then Ms. McDaniel shut the cash register drawer.  Counsel then asked the following line of questioning:

-3-

Q       We'll go through the time line bit by bit.  Okay?  If I go wrong, I want you to stop me.  You rang up the item, right?

A       Yes.

Q.      Then the drawer popped open, right?

A.      Yes.

Q       Then Mr. Powell grabbed some money, right?

A       Yes.

Q       Then you pushed on the drawer, right?

A       Yes.

Q       Then he pushed you, right?

A       Yes.

Ms. McDaniel agreed that she stated the sequence of events to the best of her memory.

Carolyn Murr testified that she was shopping at Michael's on May 20, 2007.  She testified that she was in line at another register that faced the defendant as he took money from Ms. McDaniel's register.  She said, "I was paying for my stuff and the . . . other cashier started yelling, 'Help, help, I'm being robbed.'  And so when she did that I looked up."  Ms. Murr saw the defendant "reach[] over and flip[] up the bar and . . . grab[] money."  She testified that the defendant then ran out of the store.

On cross-examination, Ms. Murr testified that the defendant used one hand to flip the bar and then "grabbed" money from the register with both hands.  Ms. Murr agreed that Ms. McDaniel "pushed the drawer up against [the defendant's] hand."  She testified that she did not see the defendant push Ms. McDaniel.

Detective Andrew Boatman of the Knoxville Police Department testified that he responded to the scene.  He said, "I spoke with the clerk/victim, she told me that the person had come in presented an item for purchase, once she opened the register that the suspect pushed her out of the way, grabbed the money and took off through the door."

Detective Boatman testified that he examined the video from surveillance cameras but that no video captured the alleged robbery.

After the State rested, and the defense moved for a partial judgment of acquittal on the issue of robbery. The defendant argued that the evidence showed that the defendant had "grabbed th[e] money" before pushing Ms. McDaniel and that, therefore, the theft had been completed and that the pushing of Ms. McDaniel was a separate assault. The trial court noted variances in the order of events as described by Ms. McDaniel and reasoned that the determination of whether the defendant had completed the theft before pushing Ms. McDaniel was within the purview of the jury. The court denied the motion.

The defendant testified that he went to Michael's on May 20, 2007, "with the intent to grab money from the register." He testified that he was "kind of scared about doing it." He said that he took an item to the register and that Ms. McDaniel picked up the item, rang it up, and told him the total amount due. He testified that he gave her a one dollar bill and that the drawer of the register "popped open." He said that he then reached into the drawer with both hands to grab "[t]wenties and tens." The defendant maintained that he reached in the drawer without harming Ms. McDaniel and that he did not make any threatening gesture or statement toward her. He testified that Ms. McDaniel then "tried to shut the drawer while [his] hands were in the drawer." He maintained that when she closed the drawer on his hands, he "jerked them back and ran." He testified that he tightly held the money in his hands when he removed them from the register drawer.

The defendant denied shoving Ms. McDaniel and maintained that he neither possessed nor displayed any weapon. The defendant admitted to previous convictions of theft, vandalism, and aggravated assault.

On cross-examination, the defendant admitted that he used the money to buy illegal drugs. He also admitted lying about his identity to police officers when he was pulled over later on May 20, 2007.

The defense rested, and the jury found the defendant guilty of theft in the first count and guilty of robbery by placing the victim in fear in the second count. The trial court announced that the two convictions would merge to reflect a single conviction of robbery.[2]

---

[2]As we discuss later in the opinion, the trial court entered two judgments of conviction for the charges despite its stated intent to merge the convictions.

*Issues on Appeal*

The defendant first argues that the trial court erred in denying his motion for judgment of acquittal at the close of the State's proof. He also argues that the entire body of convicting evidence was legally insufficient to support the jury's verdict.

*I. Judgment of Acquittal*

The defendant posits that the State's evidence, viewed in a light most favorable to the State, does not support a robbery conviction and that the trial court should have granted his motion for judgment of acquittal after the State rested its case. We need not tarry long on this issue, however, because the defendant has waived the issue on appeal by presenting evidence after the close of the State's proof. Our supreme court has held that "a defendant waives his . . . right to appeal from a trial court's refusal to grant a motion for judgment of acquittal if the defendant continues to participate in the trial after the close of the State's proof." *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Mathis v. State*, 590 S.W.2d 449, 453 (Tenn. 1979)). Accordingly, we treat this issue as waived and move on to examine the legal sufficiency of the entire evidence presented in the case.

*II. Sufficiency of the Evidence*

In arguing that the convicting evidence was legally insufficient, the defendant notes that the jury found the defendant guilty of robbery by placing Ms. McDaniel in fear. The defendant argues that the record fails to show that Ms. McDaniel's fear of violence was "precedent to or concurrent with the taking, and that this fear is what made the taking possible."

The standard by which we evaluate the sufficiency of the convicting evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e). Of critical importance in the present case, this court, in determining the sufficiency of the evidence, will not reweigh or reevaluate the evidence, *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990), and questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not the appellate court, *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Also, this court may not substitute its inferences for those drawn by the trier of fact from the evidence. *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record

as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Cabbage*, 571 S.W.2d at 835.

Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a) (2006). Theft occurs when a person "knowingly obtains or exercises control over . . . property without the owner's effective consent" with the intent to deprive the owner of the property. *Id.* § 39-14-103. Our supreme court has recently held that, in distinguishing theft from robbery, "the temporal proximity between the taking of property and the use of violence or fear is the sole relevant factor." *State v. Kevin Swift*, --- S.W.3d ----, No. W2007-00673-SC-R11-CD, slip op. at 1 (Tenn. March 25, 2010).

The defendant argues that the evidence does not show that the defendant used or threatened violence in taking the money from the cash register. He argues that "the sequence of events is clear. [The defendant] reached across the counter, grabbed the money, got his hand shut in the drawer, and then pushed the cashier to get free." He maintains that because his pushing of Ms. McDaniel occurred while his hand had already secured the money, the push was a separate, subsequent assault and "not force or fear that allowed him to exercise control over this property." The defendant argues that "[t]here is no evidence to say that [the defendant] placed the cashier in fear at any time prior to the time he grabbed the money."

At oral argument, defense counsel pointed to the recent Tennessee Supreme Court case of *State v. Kevin Swift*. In that case the defendant, Swift, entered a Best Buy store and removed two video games from their packages and concealed them in his pockets. *Kevin Swift*, slip op. at 2. Pursuant to company policy, the sales associate who spotted the theft and the store's loss prevention specialist approached Swift as he walked toward the exit of the Best Buy. *Id.* Upon confronting him, Swift swung a knife at the two men, causing them to back away. *Id.* Swift then escaped from the store. *Id.* The jury found Swift guilty of aggravated robbery. *Id.*

Our supreme court held that Swift had actually completed the "taking" that accomplished the theft "when [he] removed the games from their cases and concealed them in his pants, evincing his intent to deprive Best Buy of the property." *Id.*, slip op. at 5. Thus, the supreme court reasoned that Swift's display of a knife occurred "several minutes after the taking was complete" and that the evidence was, therefore, insufficient to support the conviction of aggravated robbery. *Id.*

We distinguish the instant case from *Kevin Swift*. First, unlike Swift's stealthy stealing of video games in a store, the defendant's reaching into the cashier's drawer

necessitated the defendant's use of some force or threat of force to obtain the money. In *Kevin Swift*, our supreme court found the theft had been completed upon Swift's concealing of the property, *id.*; however, in the instant case the defendant's placing his hands around the money in the cash drawer does not evince the same level of possession of the property as described in *Kevin Swift*. Further, in the present case, the use of force occurred in the same short instance as the theft, unlike the passage of several minutes in *Kevin Swift*.

Additionally, the sequence of the defendant's holding the money and pushing Ms. McDaniel was not as clear-cut as the defendant's brief suggests. Our review of the record shows that, on redirect-examination, Ms. McDaniel first testified that the defendant pushed her then grabbed the money. Defense counsel then recross-examined her and elicited a version of events where the defendant reached into the cash drawer before pushing her. We also note the testimony of Ms. Murr that the defendant reached into the cash drawer only after Ms. McDaniel's cry for help. The jury was presented with testimony that Ms. McDaniel was pushed by the defendant in order for him to obtain the cash and that she cried for help before the defendant took money from the register. The jury was within its purview in determining that the defendant's threatening pushing of the victim occurred prior to or in commission of the theft, and we will not disturb its finding the defendant guilty of robbery.

### III. Errors in the Judgment Forms

Lastly, we note that the defendant was charged with two counts of robbery presenting alternate theories. The jury found him guilty of the lesser included offense of theft for the first count of robbery by use of violence and found him guilty as charged of the second count of robbery by threat of force. The trial court correctly ordered from the bench that the theft conviction be merged into the robbery conviction; however, our record contains judgments of conviction for each count. The judgments reflect a sentence of 11 months, 29 days for the theft conviction to run concurrently to an eight-year sentence for robbery.

As a matter of plain error, *see* Tenn. R. App. P. 36(b); *State v. Lewis*, 958 S.W.2d 736, 738 (Tenn. 1997), we hold that principles of double jeopardy bar the defendant's multiple convictions of robbery and theft, *see State v. Hayes*, 7 S.W.3d 52, 56 (Tenn. Crim. App. 1999) (stating that theft is an element of aggravated robbery and, therefore, a lesser included offense of aggravated robbery, with the result that an accused may not be convicted of both theft and aggravated robbery when the same facts establish the offenses). The finding of guilty on the theft count should be merged into the judgment of conviction of robbery. *State v. Addison*, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997) ("Such a merger and imposition of a single judgment of conviction protects against double jeopardy and preserves the validity of the jury verdicts for future avoidance of problems related to unnecessarily dismissed 'charges' or 'convictions'").

The trial court's judgment should reflect its order from the bench to merge the theft conviction into the robbery conviction. To effect merger, the proper procedure is to merge the finding of guilt of theft into the judgment of conviction of robbery. *See State v. Timmy Reagan*, No. M2002-01472-CCA-R3-CD, slip op. at 20 (Tenn. Crim. App., Nashville, May 19, 2004) ("[N]either two sentences nor separate judgments of conviction should [be] entered, and the one judgment of conviction should reflect the merger."). On remand, the trial court should vacate the judgment of conviction of theft and amend the judgment of conviction of robbery to reflect the merger of both the findings of guilt of theft and robbery.

*IV. Conclusion*

After a review of the record, we find the evidence sufficient to support the defendant's convictions; however, we remand to the trial court to enter a corrected judgment reflecting the merger of the theft conviction into the robbery conviction.

_____
JAMES CURWOOD WITT, JR., JUDGE