IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 2000 Session

**STATE OF TENNESSEE v. HENRY C. BOND**

**Appeal from the Criminal Court for Knox County**
**No. 63811, 65692    Ray L. Jenkins, Judge**

**No. E1999-02183-CCA-R3-CD**
**October 6, 2000**

The Defendant was convicted by a Knox County jury of two counts of forgery not exceeding $500. The Defendant was sentenced as a career offender to concurrent terms of six years on each conviction. On appeal, the Defendant contends that the evidence is not sufficient to support his convictions for forgery. Finding no error, we affirm.

**Tenn. R. App. 3 Appeal; Judgment of the Criminal Court Affirmed.**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, and JOHN EVERETT WILLIAMS, JJ., joined.

Mark E. Stephens, District Public Defender; and David Gall, Assistant Public Defender, Knoxville, Tennessee, for the appellant, Henry C. Bond.

Paul G. Summers, Attorney General and Reporter; R. Stephen Jobe, Assistant Attorney General; Randall E. Nichols, District Attorney General, and Zane Scarlett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On April 9, 1997, the Defendant, Henry Bond, cashed a $450 check at Check X-Change in Knoxville, Tennessee. The Defendant claimed that the check had been made out to him by Mark Cagle. The Defendant told the employee of Check X-Change that Cagle had purchased a computer from him at a flea market. After verifying the identification of the Defendant by calling references and examining his photographic identification, the employee of Check X-Change cashed the check for the Defendant. At the request of the clerk, the Defendant also filled out an information card.

The Defendant returned three days later with a second check made out to him by the same individual for the identical amount of money. The Defendant said the check was payment for jewelry sold to Cagle at the flea market. The owner and manger of Check X-Change noticed that the endorsement was similar to the handwriting on the front of the check. Suspicious, the owner told the Defendant to wait while she performed additional verification. During this period, the Defendant

waited in the lobby of Check X-Change. At one point, the Defendant explained to the owner that Cagle had accompanied him to Check X-Change three days earlier when he had cashed the first check. The owner was able to reach Cagle, who told her he did not issue the check in question. The owner then contacted the police, who came to the scene. Cagle drove to Check X-Change to speak with the police and express his desire to prosecute. The police then arrested the Defendant for forgery.

Upon subsequent investigation, the police discovered that Cagle's mother had sent him a packet of checks about a week and a half before the April 12 incident which Cagle never received. According to Cagle, he did not issue either check to the Defendant; nor were any of the other checks in the packet ever discovered during the investigation.

### Sufficiency of the Evidence

The Defendant now argues that the evidence was insufficient to support the jury's verdict. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956); State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). On the contrary, this Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

In order to establish the crime of forgery, the State must show that the defendant forged a writing with intent to defraud another. Tenn. Code Ann. § 39-14-114(a). In this case, the Defendant now concedes that the checks presented were forged. However, he maintains that he did not personally forge the checks and that he had no knowledge at the time he presented the checks to be cashed that they had been forged. This Court must defer findings of intent to the jury unless no reasonable person could have found as the jury did. See Tenn. R. App. P. 13(e). In this case, the

finding of intent to defraud by the jury was well within reason given the surrounding circumstances. The Defendant presented two checks from the same individual and alleged that both checks were payment from two separate exchanges at the flea market. The checks were for an identical amount and were presented within three days of each other. Both checks were from a book of checks that Cagle had never received in the mail. None of the other checks from that book of checks ever turned up after the Defendant was arrested. Moreover, the handwriting on the checks was very similar to the endorsements on the checks. These coincidences are suspicious and certainly could be used by a reasonable person to infer intent to defraud.

The Defendant argues that because he did not attempt to flee, he obviously was not aware that he had presented forged checks. However, there are other reasons why the Defendant could have chosen to wait in the lobby of Check X-Change; for example, the Defendant could have truly believed the owner was verifying the information, or the Defendant could have thought he did not have the choice to leave, particularly after the arrival of the investigating police officer. Regardless, the Defendant did not meet his burden of showing that no reasonable person could have inferred intent to defraud from the evidence presented.

Accordingly, we AFFIRM the convictions.

_____
ROBERT W. WEDEMEYER, JUDGE