IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 24, 2001 Session

## STATE OF TENNESSEE v. DANIEL PAUL BATCHELOR

**Direct Appeal from the Criminal Court for Bradley County**
**No. M-99-307      R. Steven Bebb, Judge**

-------------------

**No. E2000-02264-CCA-R3-CD**
**September 18, 2001**

-------------------

Following a bench trial, the Defendant was convicted of hindering a secured creditor, a Class E felony. On appeal, the Defendant alleges that the evidence is insufficient to support the conviction. After a careful review of the record, we conclude that the evidence is sufficient and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Julie A. Rice (on appeal), Knoxville, Tennessee; and Richard Hughes, Assistant Public Defender (at trial), Cleveland, Tennessee, for the Appellant, Daniel Paul Batchelor.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Sandra Donaghy, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The Defendant was indicted by the Bradley County Grand Jury for violating Tennessee Code Annotated § 39-14-116, which states in pertinent part as follows:

> A person who claims ownership of or interest in any property which is the subject of a security interest, security agreement, deed of trust, mortgage, attachment, judgment or other statutory or equitable lien commits an offense who, with intent to hinder enforcement of that interest or lien, destroys, removes, conceals, encumbers, transfers, or otherwise harms or reduces the value of the property.

Tenn. Code Ann. § 39-14-116(a).

Following a bench trial, the trial court convicted the Defendant of the indicted offense, which is a Class E felony. On appeal, the Defendant challenges the sufficiency of the evidence. We have carefully reviewed the record, and in our view, the evidence is sufficient to support the Defendant's conviction. Therefore, we affirm the judgment of the trial court.

FACTS

At trial, Ms. Billie Goins testified that she is one of the owners of Car City, an auto dealership. On November 5, 1998, the Defendant purchased a 1991 Chevrolet S-10 pickup from Car City. A copy of a sales contract signed by the Defendant was admitted into evidence as part of Ms. Goins' testimony. The sales contract included a provision whereby Car City held a security interest in the truck until all payments were made. Ms. Goins testified that she took the title to the courthouse and "title[d] it into [the Defendant's] name with Car City [as] the lien holder." Ms. Goins testified that the Defendant became delinquent in making his payments under the terms of the sales contract, to the point that she notified the Defendant on behalf of Car City that Car City intended to repossess the truck. The Defendant initially refused to return the truck to Car City, so Ms. Goins obtained a general sessions warrant against the Defendant for hindering a secured creditor. After several apparently unpleasant and heated discussions, the Defendant and Ms. Goins reached an agreement on the morning of the first court date in General Sessions Court. Ms. Goins and her mechanic went to retrieve the truck from the Defendant, pursuant to the agreement with the Defendant whereby he would allow Car City to take possession of the truck.

Upon arriving at the Defendant's residence, where the truck was parked, Ms. Goins observed the Defendant remove the tag from the vehicle and scratch the tag down the side of the truck. She also observed the Defendant pull some coil wires off the truck and could hear the Defendant making a statement and raising his voice, which caused her to fear that the Defendant was "going to start something." Ms. Goins then immediately used her cellular phone to call 911. Ms. Goins and her mechanic were able to obtain possession of the truck and take it back to Car City.

Ms. Goins testified that the mirror on the right side of the truck was gone, that the windshield was busted, and that the radio was gone. She further testified that in November of 1998 when the truck was sold to the Defendant, it had an intact windshield, a passenger-side rearview mirror and a radio in the dashboard. Ms. Goins testified that the cost of replacing the windshield was $125.00, that the cost of repairing the scratch to the vehicle and the passenger-side rearview mirror was $437.30, and that the replacement cost of the radio was $119.35.

Randy Simmons, an employee of Car City, testified that he went with Ms. Goins to the Defendant's residence to pick up the truck. He testified that there was no battery on the truck, so he put a battery on it. According to Mr. Simmons, when he installed the battery, the Defendant came around him and jerked the coil wire off the truck. The Defendant told Mr. Simmons that he was going to take his tag off the truck. Mr. Simmons then heard "something like scratch marks" as the Defendant was walking around the vehicle and "scratching the side of the truck." Mr. Simmons testified that the Defendant pitched the coil wire back over the truck, and Mr. Simmons then put the

coil wire back on the truck and left. Mr. Simmons noticed the missing passenger-side rearview mirror and the missing radio, and he also noticed that the windshield was cracked.

Scott Kanavos, a nephew by marriage of Billie Goins, testified that he attempted to help his aunt and the Defendant resolve "the whole thing." He drove the Defendant from General Sessions Court to the Defendant's residence to enable the Defendant to turn the truck over to Ms. Goins. Although Mr. Kanavos was some distance from the truck and the other persons present during the repossession, his testimony generally corroborated the testimony of Ms. Goins and Mr. Simmons.

The Defendant testified that he bought the truck on November 5, 1998. According to the Defendant, at the time of the purchase the truck had mechanical problems and "wouldn't hardly run." The Defendant testified that Car City had repossessed his wife's vehicle for failure to make payments. His wife had left her purse in the vehicle at the time of the repossession, and the Defendant testified that Ms. Goins told him that she would not give him his wife's purse until he gave her the truck. The Defendant testified that he and his wife, accompanied by a police officer, went to Car City and obtained his wife's purse. At that time, Ms. Goins told the Defendant to bring in the truck by 10:00 the next morning. The Defendant informed Ms. Goins that he did not have a driver's license and that he would not drive the truck to Car City and risk getting caught driving without a license. He did advise Ms. Goins that she was "more than welcome" to come and get the truck. Although the exact time frame is not clear from the Defendant's testimony, it appears that shortly after this discussion, Ms. Goins obtained the general sessions warrant against the Defendant for hindering a secured creditor.

The Defendant's wife paid $500.00 on the bond to obtain the Defendant's release on the general sessions warrant. On the General Sessions Court date, a dispute arose between Ms. Goins and the Defendant over the payment of court costs for the general sessions warrant. However, with that dispute unresolved, the Defendant rode with Scott Kanavos to the Defendant's home to facilitate the repossession of the truck by Car City.

The Defendant claimed that at the time he purchased the truck, the truck's windshield had a crack "going all the way across the bottom, stretching all the way from the driver's side to the passenger's side across the bottom." The Defendant agreed that Car City had the right to repossess the truck. The Defendant testified that he had told Ms. Goins that he planned to take the battery off the truck because "there was no battery on it when I purchased it and I put my battery in it and I'm taking it off." The Defendant testified that Mr. Kanavos "drove on down the driveway" as soon as Ms. Goins and her mechanic pulled up. The Defendant testified that he removed the battery and then took the coil wire off to keep Ms. Goins and Mr. Simmons from "driving off with the tag on it." According to the Defendant, he told Randy Simmons that he was pulling the coil wire off long enough to get the tag, and he believed he said it "as nicely as could be." The Defendant denied throwing the coil wire, and he testified that he removed the license tag before replacing the coil wire on the truck.

With regard to the radio, the Defendant testified that about a month or a month and a half before this incident, he was driving down the road playing the radio when "smoke started boiling out of the dash." The Defendant testified that the radio had shorted out and "just about caught the truck on fire." According to the Defendant, the radio "was fried beyond repair."

Concerning the passenger-side rearview mirror, the Defendant explained that his wife's nephew's boy had pulled off the mirror. According to the Defendant, the mirror "wouldn't stay on right after that," and the Defendant lost the mirror. The Defendant denied scratching the vehicle on the day of the repossession as alleged by Ms. Goins and Mr. Simmons.

The Defendant's wife, Cathy Batchelor, testified for the defense. She verified that the truck had a crack in the windshield when her husband purchased it. She testified that on the day of the repossession, she and a friend had gone home for lunch and were present at the Batchelor residence when the truck was repossessed. She testified that she did not see her husband scratch the truck or do anything except take the tag off. Ms. Patsy Brown, a friend and co-worker of Cathy Batchelor, also testified for the defense and basically corroborated the testimony of Ms. Batchelor. Finally, Jobetta Solomon, the Defendant's mother, testified that she saw the truck about a week after the Defendant purchased it, at which time the crack in the windshield was present. On cross-examination, she testified that she didn't remember seeing any scratch on the truck that ran the whole length of the truck.

## ANALYSIS

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), overruled on other grounds, State v. Hooper, 29 S.W.3d 1 (Tenn. 2000).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956); State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal

defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict.  Id.

Considering the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could certainly have found the essential elements of the offense charged beyond a reasonable doubt.  Car City clearly held a security interest in the 1991 Chevrolet S-10 pickup truck.  The Defendant clearly claimed an ownership interest in the truck pursuant to his agreement to purchase the truck.  The trier of fact, after assessing the credibility of the witnesses and considering all the evidence, determined beyond a reasonable doubt that the Defendant, with the intent to hinder enforcement of Car City's security interest, harmed the truck by scratching the side of the truck with a license plate.  This conduct by the Defendant harmed the truck and reduced the value of the truck.  The trial court, which was the trier of fact in this case, ordered restitution in the amount of $150.00 for the damage to the truck caused by the scratch.  The statute defining the crime of hindering a secured creditor does not require that any minimum dollar amount of harm or reduction in value is required.

Accordingly, the judgment of the trial court is AFFIRMED.


_____
ROBERT W. WEDEMEYER, JUDGE

-5-