# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs December 18, 2001

## STATE OF TENNESSEE v. DERRANN WILLIAM ESTILL

**Direct Appeal from the Circuit Court for Bedford County**
**No. 14,829     F. Lee Russell, Judge**

---

**No. M2001-01859-CCA-R3-CD - Filed January 25, 2002**

---

The Defendant was convicted of theft of property valued between $1,000 and $10,000, a Class D felony, and criminal trespass. The trial court sentenced him as a Range II, multiple offender to six years incarceration for the theft conviction and to thirty days incarceration for the criminal trespass conviction, with the sentences to be served concurrently. The Defendant argues that insufficient evidence was presented at trial to convict him of theft or criminal trespass. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Case Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee (on appeal); Andrew J. Dearing, III, Fayetteville, Tennessee (at trial and on appeal); Curtis H. Gann,  and Larry F. Wallace, Jr., Shelbyville, Tennessee (at trial), for the Appellant, Derrann William Estill.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; William Michael McCown, District Attorney General; Michael D. Randles, Assistant District Attorney General; and Hollynn L. Hewgley, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Defendant was indicted for theft of property valued between $1,000 and $10,000, criminal trespass and public intoxication. The Defendant waived his right to a jury trial. Following a bench trial, the Defendant was convicted of theft of property between $1,000 and $10,000 and of criminal trespass. He was found not guilty of public intoxication. The trial court sentenced him as a Range II, multiple offender to six years incarceration for the theft conviction and to thirty days incarceration for the trespass conviction, with the sentences to be served concurrently. In this appeal,

the Defendant challenges the sufficiency of the evidence presented to convict him of both crimes. We conclude that the evidence is sufficient and affirm the judgments of the trial court.

FACTS

William Boyce testified that he owns Boyce Equipment, a farm equipment retailer. According to Boyce, much of their equipment is too large to store in the showroom, so it is kept outside. The outside lot is enclosed in the front and on the sides by a fence and in the back by a river. There is a gate in the front of the lot at the main entrance to the business. During non-business hours, tractors are usually pulled in front of the main entrance gate. The normal business hours for Boyce Equipment are from 8:00 a.m. until 5:00 p.m., Monday through Friday, and 8:00 a.m. until 12:00 p.m. on Saturday. An Emergency Medical Services (EMS) building is located on one side of Boyce Equipment. There is a small gate on the side of Boyce's lot that leads to the EMS building. Boyce testified that there is a field between the EMS building and Boyce Equipment and that no road or driveway leads up to the gate. This gate was unlocked on the night of the offense.

Boyce testified that police came to his home around 4:30 a.m. on October 14, 2000 and informed him that there had been an incident at the dealership. When Boyce arrived at the dealership, he noticed a white truck inside the business lot. Boyce recalled that the truck was facing the main entrance. Boyce testified that a trailer was attached to the truck with a safety chain, and a lawn mower was parked directly behind the trailer. Boyce stated that both the trailer and the mower were owned by Boyce Equipment and that the trailer had previously been parked "under a tree beside the building." According to Boyce, the trailer tilts so that equipment may be easily loaded onto the trailer. The trailer was tilted when Boyce arrived at the scene.

Officer Rod Lewis Stacy, a member of the patrol division of the Shelbyville Police Department, testified that around 4:30 a.m. on October 14, 2000, he was in his patrol car in a parking lot at the intersection of Madison Street and Wartrace Highway waiting for Sergeant David Williams, Jr., of the Bedford County Sheriff's Department. According to Stacy, the driver's side window was down, and he "kept hearing like a metal banging noise, like two pieces of metal beating together." Stacy testified that he drove into the back parking lot of the EMS building where he could see the front doors and part of the front lot of Boyce Equipment.

Stacy testified that in front of Boyce Equipment, he observed the Defendant "in front of a white pickup truck with a small trailer attached to the back of it." Stacy stated that the Defendant was "pushing on a lawn mower and rocking it." Stacy then drove around to the main gate of Boyce Equipment and walked towards the building. Stacy testified that he caught the Defendant's attention and said, "Boy, you're getting an awfully early start this morning, aren't you?", to which the Defendant replied, "Yeah, yeah, I got to get these mowers loaded." Once Stacy got a bit closer, he told the Defendant, "You don't work here. Put your hands on the truck." Stacy testified that when he began speaking, the Defendant was in between the truck and the trailer.

Stacy testified that he asked the Defendant how he got his truck into the Boyce Equipment lot, and the Defendant said that he drove it in "[t]hrough the little gate over there" which Stacy

-2-

understood to mean the gate leading to the EMS building. Stacy stated that he began to look around and could see where the Defendant had driven through the grass to get to the gate. Stacy testified that safety chains attached to the trailer had been wrapped around the ball hitch on the truck.

The Defendant testified that on the night of the offense, he and his girlfriend had been at an engagement party. His girlfriend was two months pregnant, so they had decided to get married. According to the Defendant, around 2:00 a.m., he "knew it was time . . . to go home." However, he and his girlfriend got into an argument because she did not want to leave the party. The Defendant testified that he left the party, but later went back hoping that his girlfriend would leave also. The Defendant stated that his girlfriend still did not want to leave so they "got in an argument, and [the Defendant] just got in [his] truck and started driving."

The Defendant testified that he was worried about getting arrested for driving under the influence, that he was "getting sick," and that he had to "relieve [himself]," so he pulled off the road. The Defendant recalled that he "pulled into the side" of a building, which he later learned was the EMS building; got out of the car; and relieved himself on a nearby tree. The Defendant testified that he heard a noise coming from the EMS building and saw a "red/black mustang sitting there." The Defendant stated that he also saw the lights come on in a nearby house and "panicked." According to the Defendant, he got in his truck and backed it towards the EMS building. The Defendant stated that he couldn't "circle out" so he "pushed through [the] little gate" behind Boyce Equipment. The Defendant recalled that he drove through the grass to get to the gate and that he "scratched [his] truck up pretty good" getting through the gate. The Defendant maintained that he went through the gate because he did not want to go back through the EMS parking lot, and he was "trying to find another way out."

The Defendant testified that once inside the gate, he drove around Boyce Equipment and discovered that he could not get out. The Defendant stated that he could not exit the way he entered because the small gate through which he entered "only opened outward," and "there was no way for [him] to squeeze back through." The Defendant testified that he hooked the trailer up to his truck because he "figured that maybe [by] pushing that trailer up to there, maybe [he] could just run the truck up, there since it's a small wheeled truck, across that fence." The Defendant maintained that he did not try to move the mower onto the trailer and that he was just going to use the trailer as a ramp to cross over the fence surrounding the lot. The Defendant claimed that he never hooked the trailer up to the truck and that the officers who said that he did were lying.

ANALYSIS

The Defendant argues that insufficient evidence was presented at trial to convict him of theft and criminal trespass. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct

evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

The Defendant was charged with and convicted of theft of property, which is defined as follows: "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. Because the value of the property in this case was estimated to be between $1,000 and $10,000, the crime is a Class D felony. Id. § 39-14-105(3). In finding the Defendant guilty of theft, the trial court stated,

> It does appear to me that there was an exercise of control. The trailer was moved.
> And it appears to me likewise that there was an effort; and there was not only an
> effort, but there was an exercise of control over the mower as well.

The trial court also found the testimony of William Boyce and Officer Stacy to be more credible than that of the Defendant.

We agree that the State presented sufficient evidence to support the Defendant's conviction for theft of property valued between $1,000 and $10,000. Officer Stacy testified that he saw the Defendant "pushing a lawn mower and rocking it." When Stacy approached the Defendant and commented on the time, the Defendant stated that he needed "to get these mowers loaded." Officer Stacy and William Boyce also observed that a trailer was attached to the Defendant's truck with a chain. Boyce testified that the Defendant did not have permission to take any property from the lot. Boyce estimated the trailer's value to be between $700 and $1,200, and he estimated the mower's worth to be about $5,000. We conclude that the evidence presented at trial supports the jury's finding that the Defendant, with the intent to deprive the owner of the property, did knowingly exercise control over the property without Boyce's effective consent.

There was also sufficient evidence presented to convict the Defendant of criminal trespass. The offense of criminal trespass is committed when a person enters or remains on the property without the owner's effective consent. Tenn. Code Ann. § 39-14-405(a); State v. Langford, 994 S.W.2d 126, 129 (Tenn. 1999). "The accused's knowledge that he or she did not have the 'effective consent' to enter the property may be inferred from '(1) personal communication to the [accused]

by the owner or by someone with apparent authority to act for the owner,' and (2) '[f]encing or other enclosure obviously designed to exclude intruders.'" State v. Hollingsworth, 944 S.W.2d 625, 628 (Tenn. Crim. App. 1996) (quoting Tenn. Code Ann. § 39-14-405(a)(1)-(2)).

In this case, Boyce Equipment was enclosed with a fence. The only openings to the fence included a main gate in the front and a small gate near the EMS building. The main gate was secured by pulling tractors in front of it. The small gate, although not locked, was located on the side of the building and was only accessible through a grassy area. There was no road or driveway leading to the small gate. The Defendant was on the property at 4:30 a.m. The normal business hours for Boyce Equipment were from 8:00 a.m. until 5:00 p.m., Monday through Friday, and 8:00 a.m. until 12:00 p.m. on Saturday. We conclude that the trial court properly found that the Defendant was on the property without the owner's effective consent.

Finally, the Defendant argues that although the charge of public intoxication (Count 3 of the indictment) was dismissed, the judgment shows that the Defendant was sentenced to thirty days incarceration for this charge, concurrent with the theft and criminal trespass sentences. The judgment indicates that the Defendant was found "[n]ot [g]uilty" of public intoxication. Thus, the judgment should be amended to show that the Defendant did not receive a sentence for public intoxication, and we therefore remand this case to the trial court solely for that purpose.

Accordingly, the judgments of the trial court are AFFIRMED and the case is REMANDED for the entry of an amended judgment in Count 3.

_____
ROBERT W. WEDEMEYER, JUDGE