IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 29, 2002

**STATE OF TENNESSEE v. BLAKE SHANE WALKER**

**Direct Appeal from the Circuit Court for Cocke County**
**Nos. 8390 and 8426      Ben W. Hooper, II, Judge**

————————————

**No. E2002-00509-CCA-R3-CD**
**February 10, 2003**

————————————

A Cocke County jury found the Defendant guilty of theft of property valued over $500 and of burglary of a motor vehicle. The trial court sentenced the Defendant as a Range II offender to three years for each conviction and ordered that the sentences run concurrently to each other but consecutively to prior sentences in Jefferson County. The Defendant now appeals, arguing that insufficient evidence was presented to convict the Defendant of theft and burglary. Finding no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

Amber D. Haas, Assistant Public Defender, Newport, Tennessee, for the appellant, Blake Shane Walker.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and James B. Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. FACTUAL BACKGROUND

Misty Penland testified that she formerly worked for Lorie Messer at M & L Concrete in Cocke County. She recalled that on February 13, 2001, she took lunch to M & L Concrete so that she could visit with her friend, Teresa. She reported that when she pulled into the parking lot at M & L Concrete, she saw "a red car and . . . a short, young, bald-headed man standing close to [Messer's] car." Penland recalled that the man was wearing a "plaid colored jacket or over shirt." Penland did not notice if the man had anything in his hands. She testified that the man "got inside the red car and it was driven by a female with long dark hair." Penland recalled that the red car left

the parking lot "going a lot faster than what it should have on a gravel road." Penland testified that after seeing the car leave the parking lot, she went inside and had lunch. She stated that she "did not think anything about the gentleman being close to [Messer's] car . . . until later on that evening when [Messer] called [her] and told [her] what had happened."

On cross-examination, Penland recalled that the car that she saw leaving the parking lot that day was a "maroon or red colored four-door car." She stated that Lorie Messer drove a "gold colored car." Penland testified that the entrance to the M & L Concrete parking lot was big enough for two cars to pass through at the same time "if they go slowly." She acknowledged that she did not actually see the man get in or out of Messer's car. Penland also acknowledged that she did not see the man carrying anything in his arms or any bulges in his pockets.

On re-direct examination, Penland testified that she gave a statement to Detective Derrick Woods on February 14, 2001. After reviewing her statement, Penland testified that she had told Detective Woods that she saw the man in the parking lot shut Messer's car door. On re-cross examination, she testified that in her statement she said that she saw what she thought looked like the man shutting the door.

Lorie Messer testified that she is employed by M & L Concrete in Cocke County and that she "run[s] the place for . . . the owner." Messer testified that she had worked at M & L Concrete for over four years. She recalled that around lunchtime on February 13, 2001, she spoke to the Defendant about a job and told him that he could start working the next day at 7:00 a.m. Messer stated that approximately six employees were in the office on the day that she hired the Defendant.

Messer testified that about an hour after lunch, she left work, walked to her car, and realized that her purse was missing. She testified that her purse had been in the front seat or floorboard of the car. After initially trying to find the Defendant herself, Messer contacted Detective Derrick Woods. She testified that she never locks the doors to her 1989 Chrysler New Yorker because she is constantly "in and out" of it. Messer testified that her purse contained the following: her wedding rings; a gold ring with three stones; two long gold knuckle rings; a coin ring; a heart charm; two bracelets; her driver's license; a truck title; her social security card; her children's social security cards; birth certificates; a food stamp card in an amount over $200; and between $500 and $600 in cash. She stated that she had so many items in her purse because she was in the process of moving. Messer testified that a total of nine rings were in her purse, and she approximated that they were worth about $800 to $1000. She testified that her purse and its contents were never recovered.

Messer testified that she saw the Defendant on the day after her purse was stolen. She stated that the Defendant was talking to Detective Woods and another officer at M & L Concrete. Messer testified that the Defendant apologized to her and asked her not to bring charges against him. She stated that she told the Defendant that she would not press charges against him if he returned her rings and her identification. According to Messer, the Defendant said that "he would work out a way to pay [Messer] back on it if [she] just wouldn't take the warrant out." Messer testified that she

agreed to go with the Defendant to retrieve the property, but Detective Woods would not allow that.

Detective Derrick Woods of the Cocke County Sheriff's Department testified that he investigated the crime in this case and filled out an incident report. He stated that he interviewed the Defendant and his wife in the Criminal Investigator's Office. Woods recalled that at some point, the Defendant asked to speak to the victim who had filed the complaint. Woods stated that he allowed the Defendant to speak to Messer and that he was able to hear the conversation that transpired between the Defendant and Messer in the hallway outside Woods' office. According to Woods, the Defendant told Messer that he would "take her to get her stuff" if they went alone. Woods testified that he would not allow the Defendant and Messer to leave together, and the Defendant declined to go with police. Woods was unable to locate Messer's purse or its belongings. Woods determined that the Defendant visited at least two pawn shops on the day that Messer's purse was stolen. He stated that the Defendant paid approximately eighty-five dollars towards a drill and a diamond ring at Dixie Pawn Shop and that he paid fifty-five dollars towards a white Chevy van at The Hock Shop.

Detective John Carroll of the Cocke County Sheriff's Department testified that he assisted Detective Woods in the investigation of Messer's stolen purse. He stated that he was present during a conversation between the Defendant and Messer. Carroll recalled that the Defendant indicated to Messer that if she did not press charges against him, he would take her to retrieve her belongings. Carroll stated that the Defendant made it clear that officers could not accompany the Defendant and Messer when they retrieved her belongings. According to Carroll, the Defendant indicated that some of the items in the purse could have been damaged because they were probably wet.

Lorie Messer was recalled to testify. She stated that she had fired an employee at about 7:15 a.m. on the day that she hired the Defendant. Messer recalled that she walked outside with the employee and saw him drive away in his green truck. She stated that she went out at approximately 9:00 a.m. to get gas, and her purse was in her car. On re-cross examination, Messer testified that she also went to her car "a little bit after 9:00 [a.m.]" to get change from her purse.

Gabriel Rollins Holt testified that he was formerly married to the Defendant's aunt. He stated that from February 2, 2001 until February 11, 2001, the Defendant worked for him "clear[ing] off land" that he owned. He recalled that he paid the Defendant $220 on the morning of February 13, 2001.

Rhonda Walker, a co-defendant in this case, testified that she is the Defendant's wife. She stated that she went with the Defendant on February 13, 2001 to M & L Concrete. Walker testified that she and the Defendant were in a two-door, 1992 Buick Skylark and that she was driving because the Defendant did not have a driver's license. She recalled that they arrived at M & L Concrete around lunchtime and that she waited in the car while the Defendant went inside to inquire about a job. Walker testified that the Defendant was in the office for about ten to fifteen minutes, and then they left. She reported that as they were leaving, they passed a silver car that was coming into the parking lot. Walker testified that the Defendant was wearing camouflage overalls and an orange

Tennessee hat that day. She testified that the Defendant was not carrying anything with him when he got in their car. Walker stated that after they left M & L Concrete, they went to Krystal's and then to Dixie Pawn Shop and The Hock Shop. She recalled that after going to the pawn shops, she and the Defendant went to Wal-Mart to look for a Valentine's Day present, and then they went home. On cross-examination, Walker testified that while at M & L Concrete, she saw a car sitting near the doorway of the building. She denied that the Defendant took a purse from the car.

## II. ANALYSIS

The Defendant argues that insufficient evidence was presented at trial to convict him of theft of property valued over $500 and burglary of a motor vehicle. Burglary of a motor vehicle occurs when, without the owner's consent, an individual enters a motor vehicle with the intent to commit theft. Tenn. Code Ann. § 39-14-402(a)(4). Burglary of a motor vehicle is a Class E felony. Id. § 39-14-402(d). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." See id. § 39-14-103. Theft of property is a Class E felony if the value of the property obtained is more than five hundred dollars ($500), but less than one thousand dollars ($1,000). See id. § 39-14-105(2). The value of the property is its fair market value at the time and place of the offense. See id. § 39-11-106(a)(36)(A)(i).

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

We conclude that sufficient evidence was presented for a rational jury to find the Defendant guilty of theft of property valued over $500 and of burglary of a motor vehicle. Messer testified that

her purse was in her unlocked car shortly after 9:00 a.m. on the morning of February 13, 2001. She stated that the Defendant came in around lunchtime, and she offered him employment. Misty Penland testified that she went to M & L Concrete around lunchtime and saw a man standing near Messer's car. When Messer left work approximately an hour and a half after lunch, her purse was missing from her car. Messer, Detective Woods, and Detective Carroll all testified that the Defendant told Messer that he would return her purse if she would not press charges against him. Thus, the evidence was legally sufficient to sustain the convictions against the Defendant.

Accordingly, the judgments of the trial court are AFFIRMED.


_____
ROBERT W. WEDEMEYER, JUDGE