# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

SEPTEMBER 1997 SESSION



December 3, 1997

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9610-CC-00425 |
| | ) | |
| vs. | ) | Stewart County |
| | ) | |
| **RAY VANCE,** | ) | Hon. Robert E. Burch, Judge |
| | ) | |
| Appellant. | ) | (Aggravated Sexual Battery) |
| | ) | |

FOR THE APPELLANT:

WADE C. BOBO (Trial)
Attorney at Law
129 S. Third St.
Clarksville, TN 37040

SHIPP R. WEEMS  (Appeal)
District Public Defender

ROBBIE T. BEAL (Appeal)
Asst. District Public Defender
P.O. Box 160
Charlotte, TN 37036

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

SARAH M. BRANCH
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

DAN ALSOBROOKS
District Attorney General

JAKE LOCKERT
Assistant District Attorney General
Room 206
Humphreys County Courthouse
Waverly, TN 37185

OPINION FILED: _____

**AFFIRMED**

CURWOOD WITT
JUDGE

<u>**OPINION**</u>

The defendant, Ray Vance, appeals his conviction of aggravated sexual battery, which was returned by a jury of his peers in the Stewart County Circuit Court. The defendant is presently serving a ten-year incarcerative sentence for that conviction. In this direct appeal, he raises three issues for our consideration:

1. Whether the court erred in disallowing corroborative testimony that the victim was sexually mature despite her young age.

2. Whether the court erred in instructing the jury regarding the defendant's release eligibility dates if convicted.

3. Whether the evidence presented at trial sufficiently supports the jury's verdict.

Having reviewed the record and the parties' respective briefs, we affirm the judgment of the trial court.

In 1994, the defendant lived with his girlfriend, Brenda Springs. Ms. Springs's ten year old daughter, B.J.,[1] lived with the defendant and Ms. Springs for several months in 1994. Prior to coming to live with the defendant and Ms. Springs, B.J. lived in North Carolina with her grandmother, who was Ms. Springs's mother, and her step-grandfather. The grandparents obtained legal custody of B.J. when she was two years old. When B.J.'s grandmother passed away in April 1994, B.J.'s step-grandfather allowed her to go live with her mother because it had been B.J.'s grandmother's dying request that her daughter have a second chance at raising B.J.

When B.J. arrived in Tennessee, her mother and the defendant lived in a farm house in Montgomery County. This housing was provided by the farm owner for whom the defendant and Ms. Springs sharecropped. A few weeks prior to November 20, 1994, the family moved to a small, dilapidated house trailer in

---

[1]This court refers to minor victims of sex crimes by initials only.

Stewart County. On November 20, 1994, the offense which underlies this conviction occurred.[2]

Julie Rosof, a family nurse practitioner, testified the victim came to Our Kids Center in Nashville following allegations of sexual abuse by the defendant. Our Kids specializes in evaluating alleged victims of child sexual abuse. A history was taken by a social worker, wherein B.J. reported the defendant touched her breasts and penetrated her vagina with his penis. Nurse Rosof was also furnished a prior report the victim made to the Department of Human Services, in which she described the event as occurring when the defendant was drunk, the defendant making the victim touch him, and the defendant telling the victim he loved her. Nurse Rosof performed a vaginal exam and discovered tears in the hymen, indicating penetration had occurred. Rosof was unable to tell when penetration had first occurred or say whether the penetration was sexual in nature.

The victim testified she was in the living room one evening when the defendant came in drunk. He started kissing her, and having had enough of his sexual abuse, she ran out of the trailer and told a neighbor. She said the defendant sexually assaulted her nine or ten times, the last being on Sunday, November 20, 1994.[3] On that occasion, the victim was again in the living room sitting on the sofa.

---

[2]The presentment underlying the defendant's conviction alleges that the defendant "on or about the 20th day of November, 1994, and prior to the finding of presentment . . . then and there did unlawfully and feloniously sexually penetrate [B. J.], a person less that thirteen (13) years of age, in violation of T.C.A. § 39-13-522 . . ."

[3]The defendant interposed no objection to the victim's testimony about the defendant sexually assaulting her on occasions prior to November 20, 1994. We point out, however, that although the presentment described in footnote 1, supra, was the only charging instrument included in the record, the record otherwise reflects that the case proceeded to trial upon two counts of rape of a child, with the second count (presumably contained within a separate presentment or indictment) alleging an indefinite date. Based upon the apparent joinder of this second count, the victim's testimony may well have been admissible under the

3

The defendant came in, held her down, kissed her, and put his "thing" in her "thing," meaning he engaged in penile/vaginal intercourse.

The defendant took the stand in his own defense and denied any sexual contact with the victim. Ms. Springs likewise testified she believed her daughter was fabricating her claim against the defendant and avowed the defendant was not the type of person who would sexually abuse a child. In support of the defendant's claim of innocence, he offered the theory that the victim fabricated the story because she wanted to go back to North Carolina to live with her step-grandfather and did not realize the consequences of her actions. He also offered considerable evidence of the victim's dissatisfaction with her diminished standard of living since coming to live with Ms. Springs and him, in that they could not afford to buy her many of the things she wanted nor allow her to do things which were too expensive for their budget. Several witnesses testified B.J. bragged she had been able to do as she pleased and have whatever she wanted when she lived in North Carolina. Further, the defense posited, B.J. was very dissatisfied with her living conditions, particularly once the family moved into the house trailer in late 1994, which both the defendant and B.J.'s mother described as a "dump." Apparently, B.J. was unruly in that she did not do her homework or chores, did not clean up after herself in the home, did not follow her mother's instructions and was not respectful of her mother and other adults. According to defense witnesses, B.J.'s behavioral shortcomings were the subject of considerable strife in the home. Moreover, B.J. sometimes blamed the defendant for getting her into trouble when he would report her actions to her mother, who would then correct B.J. The defendant claimed B.J.'s demeanor, though deteriorating all along, became

rule established in State v. Rickman, 876 S.W.2d 824, 829 (Tenn. 1994) (approving the use of "evidence of other sex crimes [between the defendant and the victim] when an indictment is not time specific and when the evidence relates to sex crimes that allegedly occurred during the time charged in the indictment").

particularly bad once the family moved into the trailer. By this time, the defendant had given up on maintaining good relations with B.J. and avoided her, paying attention instead to B.J.'s mother, who was pregnant with his child. This, too, was a source of contention, B.J. having erupted in anger on a few occasions when the defendant was sitting on the sofa touching B.J.'s mother's belly. Further, B.J. had to change from her Montgomery County school to a Stewart County school when the family moved to the trailer. The children on the school bus in Stewart County made fun of B.J. because the defendant's chickens followed her to the bus stop.

Much of the remaining proof, consisting of the testimony of numerous witnesses, revolved around corroborative proof of B.J.'s attitude and behavior while living with the defendant and her mother, whether the defendant had been physically abusive toward B.J.'s mother, and the defendant's use of alcohol during the time period he was alleged to have sexually abused B.J.

Of particular importance was proof relating to B.J.'s prior sexual activity with a seventeen year old farm worker. The defense claimed this explained the physical findings that B.J. had hymenal tears indicating past penetration. In a hearing held pursuant to Tennessee Rule of Evidence 412, the court ruled the evidence was admissible through the testimony of Crystal Dennis, a fourteen year old child at the time of trial, who testified B.J. sat with her on the school bus a week or two after school began in August and confided that she had engaged in sexual relations with a farm worker. Crystal was surprised that B.J. was so knowledgeable about sexual matters, and she doubted B.J. was telling the truth. The court did not allow the defendant to present other testimony which directly or indirectly corroborated his claim B.J. had engaged in sexual relations with the farm worker. Similarly, the court disallowed testimony which tended to portray B.J. as being "boy crazy" or a "hot britches," as she was described by witnesses in the hearing on the

5

issue. However, the court allowed the defense to develop evidence about B.J.'s inappropriate manner of dress for the purpose of establishing her defiance of her mother's orders.

At trial, the defendant was acquitted of rape of a child but convicted of aggravated sexual battery, a lesser offense.[4] See Tenn. Code Ann. § 39-13-504 (1997).

## I

The defendant first contends the court erred in excluding the testimony of Donna Austin (1) that corroborated Crystal Dennis' testimony that the victim had engaged in sexual relations with a seventeen year old farm worker,[5] and (2) that supported the defendant's theory of B.J.'s motive to fabricate the charges of rape.[6] The state claims the trial court properly excluded this testimony because the defendant failed to follow the procedure announced in Rule 412, Tennessee Rules of Evidence, for allowing admission of such evidence.

Rule 412 provides that evidence of a sex offense victim's reputation

---

[4]There were actually two counts of rape of a child, one occurring November 20, 1994, and the other for which an exact date was not specified. The jury considered two counts of rape of a child, convicting the defendant only of aggravated sexual battery occurring on November 20, 1994.

[5]At trial, defense counsel contended evidence other than the testimony of Ms. Austin corroborated that the victim had sex with a farm worker. All of this purportedly corroborative evidence was excluded by the trial court. On appeal, defense counsel (not the same attorney as trial counsel) challenges only the exclusion of Ms. Austin's testimony. We consider only the issue which the defendant places before us.

[6]In his brief, the defendant relies on Code section 40-17-119, the former rape shield statute, and Rules of Evidence 401 and 404(a)(2). Section 40-17-119 is the incorrect rubric for analyzing this issue. Section 40-17-119 of the Code was repealed in 1991, three years before the criminal act in this case and four years before the trial. See Tenn. Code Ann. § 40-17-119, Compiler's Notes (1997).

and specific instances of sexual behavior are generally inadmissible, with certain exceptions. The exception pertinent to this case is found in subdivision (c)(4)(I) of Rule 412, evidence of sexual behavior which rebuts or explains scientific evidence. Tenn. R. Evid. 412(c)(4)(i). In order for such evidence to be admissible, the defendant must first file and serve a written motion to offer such evidence no later than ten days before trial is scheduled to begin,[7] with such motion containing a written offer of proof of the specific evidence and the defendant's purpose in introducing it. Tenn. R. Evid. 412(d)(1). The court must then hold a hearing outside the hearing of the public and the jury to determine whether it will allow admission of the evidence by balancing the probative value of the evidence with its unfair prejudice to the victim. Tenn. R. Evid. 412(d)(2), (4). The procedure described by the Rule is mandatory, using the word "shall" for the actions to be undertaken by the defense and the court before such evidence will be allowed. See Tenn. R. Evid. 412(d).

At the Rule 412 hearing conducted in this case, defense counsel conceded he had not followed the procedure mandated by the Rule. However, the defendant asserts the state was on notice of Crystal Dennis' anticipated testimony of the victim's prior sexual activity with a farm worker through informal discussions between defense counsel and the assistant district attorney, as well as through an affidavit filed by defense counsel in support of an earlier motion for continuance. The state conceded it was not prejudiced by lack of notice of Crystal Dennis' proposed testimony. On the other hand, defense counsel admitted he failed to give the state notice, formal or informal, of Ms. Austin's proposed corroborative testimony. The defendant made an offer of proof, wherein Ms. Austin testified that

---

[7]The motion may be made at a later time if the court determines the evidence is newly discovered and could not have been discovered earlier through due diligence or the issue related to the evidence is newly arisen. Tenn. R. Evid. 412 (d)(1)(i).

**7**

in approximately June or July 1994 she overheard B.J. telling a sixteen year old girl that she had "been with" a farm worker, which Ms. Austin interpreted as meaning B.J. had engaged in sexual relations. Ms. Austin thought B.J. was lying to impress the older girl. The court ruled the testimony was not admissible because the defendant failed to comply with the notice requirements of Rule 412.

The defendant has not offered any reason why we should excuse his failure to comply with the Rule's mandatory requirements, arguing simply the court erred in excluding this relevant evidence. The notice provisions of Rule 412 are mandatory. See State v. Gussie Willis Vann, No. 03C01-9408-CR-00279, slip op. at 10 (Tenn. Crim. App., Knoxville, Sept. 18, 1995) (evidence inadmissible where defendant did not comply with Rule 412(d)); State v Stephen Ray Stamps, No. 02C01-9301-CC-00002, slip op. at 15 (Tenn. Crim. App., Jackson, Mar. 2, 1994) ("[p]rior sexual behavior with others by the victim of the offense is altogether inadmissible unless there is compliance with Rule 412(d)"), perm. app. denied (Tenn. 1994). The trial court correctly excluded this evidence based on the defendant's noncompliance with Rule 412.

The defendant also argues the court improperly limited Ms. Austin's testimony regarding the victim's motive to fabricate her claim the defendant raped her. The defendant's argument in this regard is confusing. He argues Ms. Austin testified B.J. claimed she could "do anything I want" while living at her grandparents' home, and by accusing the defendant of raping her, she was assured of being able to return to live at her step-grandfather. The defendant then argues the court ruled this testimony "returned 'to the prohibitive testimony' of sexual conduct." However, this "prohibitive testimony" language which the defendant correctly attributes to the trial court is found in the transcript where the court is hearing arguments regarding B.J.'s alleged eager attitude toward the opposite sex. To be sure, Ms. Austin

**8**

testified extensively at trial about B.J.'s comments she could have and do anything she wanted in her grandparents' home, and she complained about her mother and the defendant not having enough money to provide for the lifestyle to which she was accustomed. The defendant was not limited in this line of questioning. This issue has no merit.

## II

Next, the defendant claims the trial court erred in instructing the jury on the release eligibility dates associated with the crimes submitted for determination. He claims such an instruction would "tend to confuse the jury in consideration of the issues." He further claims, without citation to supporting authority, that the release eligibility dates given the jury were inaccurate when compared with the actual amount of time served by most convicted sex offenders. He also maintains the release eligibility date is superfluous and the instruction placed undue emphasis on the possibility of early release. Finally, he claims this error is not waived, notwithstanding defense counsel's failure to object at trial. Not surprisingly, the state disagrees, arguing the instruction, if error, was harmless, consisting of a mere three sentences of a ten page charge.

Code section 40-35-201 allows, subject to procedural requirements, either party to request an instruction on range of punishment in non-capital cases. Tenn. Code Ann. § 40-35-201(b)(1) (1997). The statute requires that "[s]uch instruction shall include an approximate calculation of the minimum number of years a person sentenced to imprisonment for the offense charged and lesser included offenses must serve before reaching such person's earliest release eligibility date," Tenn. Code Ann. § 40-35-201(b)(2)(A)(i) (1997), and that the actual time served prior to release is a matter in the discretion of the board of paroles. Tenn. Code Ann. § 40-35-201(b)(2)(A)(ii) (1997).

In this case, the record does not reflect that either party filed a motion for such instruction prior to the seating of the jury, as required by the statute. See Tenn. Code Ann. § 40-35-201(b)(1) (1997). The defendant made no objection to the instruction at trial before or after it was given to the jury, though he did claim in his motion for new trial that its inclusion in the charge was error. Though he claims the information contained in the instruction is inaccurate, he has offered no evidence or citation to authority which supports his proposition. As such, the only issue is whether the court erred in giving an instruction that ostensibly was not requested by either party. The defendant makes no argument illustrating how he was prejudiced by the instruction. Cf. State v. Marvin Gaye Millbrook, No. 77, slip op. at 4-5 (Tenn. Crim. App., Jackson, Apr. 3, 1991) (defendant failed to demonstrate prejudice from court's erroneous instruction on range of punishment). We fail to see how the instruction, which was available as a matter of right to either party and which contained no information which has been shown to be inaccurate, prejudiced the defendant. This issue has no merit. Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b).

## III

Finally, the defendant attacks the sufficiency of the convicting evidence. He does not attack the sufficiency of one or more elements of the state's proof of the crime. Rather, he claims the conviction should be set aside because it is "an obvious compromise verdict," in that the victim maintained the elements of the crime of rape occurred, yet the jury did not accredit her testimony enough to find him guilty of rape of a child. On the other hand, the state claims the jury accredited the victim's testimony, which clearly supports the defendant's guilt of the offense of aggravated sexual battery.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d

856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

The defendant was convicted of aggravated sexual battery of the victim occurring on November 20, 1994. In the context of this case, aggravated sexual battery is the unlawful sexual contact with a victim under the age of 13. Tenn. Code Ann. § 39-13-504 (1997). "Sexual contact" is defined as including "intentional touching of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6) (1997).

In the light most favorable to the state, the victim testified the defendant sexually assaulted her on November 20, 1994. The victim's testimony described the prohibited sexual contact. The victim found "sticky stuff" in her panties when she went to the bathroom after the assault. The victim testified the usual modus operandi employed by the defendant in his assaults on her was to sit next to her on the sofa first, then "he'd be like all over me." Medical evidence corroborated that the victim's vagina had been penetrated. The victim talked with several individuals after the abuse came to light, and a case worker from the Department of Human Services testified the victim's accounts of the crime to these individuals were consistent. At the time of the assault, the victim was ten years old. From these facts, the jury could rationally find all elements of the crime of aggravated sexual battery beyond a reasonable doubt.

Furthermore, we are not compelled by the defendant's argument that the conviction should be set aside because the jury allegedly reached a

**12**

compromise verdict. In Tennessee a jury is allowed to extend mercy to a defendant by finding him guilty of a lesser offense, even in the face of proof he is guilty of the greater offense. See, e.g., State v. Sherman David Lawson, No. 03C01-907-CR-192, slip op. at 3-4 (Tenn. Crim. App., Knoxville, Feb. 6, 1992) (relying on State v. Allen, 692 S.W.2d 651, 653 (Tenn. Crim. App. 1985)).

We find the evidence sufficient to support the defendant's conviction of aggravated sexual battery.

In summary, the defendant has failed to demonstrate reversible error. We affirm the judgment of the trial court.

_____
CURWOOD WITT, JUDGE

CONCUR:


_____
GARY R. WADE, JUDGE


_____
THOMAS T. WOODALL, JUDGE